## PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name  <u>CAMPBELL</u>      <u>MAURICE</u>        <u>E</u>
       (Last)              (First)           (Initial)

Prisoner Number  <u>E-10493    CTF  C-243</u>

Institutional Address  <u>P.O. BOX 689</u>

<u>SOLEDAD, CALIFORNIA   93960</u>

ORIGINAL
FILED
AUG 4 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

<u>MAURICE EDWARD CAMPBELL</u>

(Enter the full name of plaintiff in this action.)

           vs.

<u>BEN CURRY  (Warden)</u>

_____

_____

_____

(Enter the full name of respondent(s) or jailor in this action)

Case No. CV 08 3725 (PR)
(To be provided by the clerk of court)

**PETITION FOR A WRIT
OF HABEAS CORPUS**

### Read Comments Carefully Before Filling In

#### When and Where to File

You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS          - 1 -

1    <u>Who to Name as Respondent</u>

2        You must name the person in whose actual custody you are.  This usually means the Warden or

3    jailor.  Do not name the State of California, a city, a county or the superior court of the county in which

4    you are imprisoned or by whom you were convicted and sentenced.  These are not proper

5    respondents.

6        If you are not presently in custody pursuant to the state judgment against which you seek relief

7    but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8    custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9    was entered.

10   A.  INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11       1.  What sentence are you challenging in this petition?

12           (a)    Name and location of court that imposed sentence (for example; Alameda

13                  County Superior Court, Oakland):

14           **Los Angeles County Superior Court/Pasadena NE-Div**

15                  Court                               Location

16           (b)    Case number, if known __GA049519__

17           (c)    Date and terms of sentence __Sentenced 3/13/03, 15-years__

18           (d)    Are you now in custody serving this term?  (Custody means being in jail, on

19                  parole or probation, etc.)         Yes __X__    No _____

20                  Where? **Monterey California**

21                  Name of Institution: **Correctional Training Facility(CTF)**

22                  Address: **P.O. BOX 689,  Soledad, CA 93960**

23       2.  For what crime were you given this sentence?  (If your petition challenges a sentence for

24   more than one crime, list each crime separately using Penal Code numbers if known.  If you are

25   challenging more than one sentence, you should file a different petition for each sentence.)

26   **1 count of burglary Penal Code-459**

27   **Three Strike Law enhancement for prior conviction, enhance-**

28   **ment for serious felony prior, enhancement for prison prior.**

PET. FOR WRIT OF HAB. CORPUS        - 2 -

3. Did you have any of the following?

Arraignment: Yes __X__ No ____

Preliminary Hearing: Yes __X__ No ____

Motion to Suppress: Yes ____ No __X__

4. How did you plead?

Guilty __X__ Not Guilty ____ Nolo Contendere ____

Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have? **N/A**

Jury ____ Judge alone ____ Judge alone on a transcript ____

6. Did you testify at your trial? Yes ____ No ____

7. Did you have an attorney at the following proceedings: **Deputy Public Defender**

(a) Arraignment Yes __X__ No ____

(b) Preliminary hearing Yes __X__ No ____

(c) Time of plea Yes __X__ No ____

(d) Trial Yes ____ No __X__

(e) Sentencing Yes __X__ No ____

(f) Appeal Yes __X__ No ____

(g) Other post-conviction proceeding Yes ____ No __X__

8. Did you appeal your conviction? Yes __X__ No ____

(a) If you did, to what court(s) did you appeal? **2nd Dist California**

Court of Appeal Yes __X__ No ____

Year: 3/11/04 Result: **Judgment Affirmed/Denied**

Supreme Court of California Yes __X__ No ____

Year: 5/19/04 Result: **No.S124105 Review Denied**

Any other court **U.S. Central District Ct.** Yes __X__ No ____

Year: 2008 Result: **No.CV 06-04064 SJO (RZ)** **(Pending)**

(b) If you appealed, were the grounds the same as those that you are raising in this

1    petition?                                                    Yes _____    No __X__

2    (c)    Was there an opinion?                                 Yes _____    No __X__

3    (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                                                 Yes _____    No __X__

5    If you did, give the name of the court and the result:

6    _____

7    _____

8    9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9    this conviction in any court, state or federal?             Yes _____    No __X__

10   [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11   challenged the same conviction you are challenging now and if that petition was denied or dismissed

12   with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13   for an order authorizing the district court to consider this petition. You may not file a second or

14   subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15   U.S.C. §§ 2244(b).]

16   (a)    If you sought relief in any proceeding other than an appeal, answer the following

17   questions for each proceeding. Attach extra paper if you need more space.

18   I.    Name of Court: **Los Angeles County Superior Court/NE**

19   Type of Proceeding: **Petition for writ of Habeas Corpus**

20   Grounds raised (Be brief but specific):

21   a. **Various Constitutional Violations at Sentencing**

22   b. **Ineffective Assistance Trial Counsel And**

23   **Ineffective Assistance Appellate Counsel.**

24   _____

25   Result: **Denied**                          Date of Result: **3/14/05**

26   II.   Name of Court: **Cal Court Appeal 2nd Dist, Div-7**

27   Type of Proceeding: **Writ of Habeas Corpus**

28   Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS          - 4 -

a. Various Constitutional Violations at
Sentencing Phase.

b. Ineffective Assistance Trial & Appellate
Counsel.

Result: No. B182605, Denied    Date of Result: 4/28/05

III.    Name of Court: California Supreme Court

Type of Proceeding: Writ of Habeas Corpus

Grounds raised (Be brief but specific):

a. Various Constitutional Violations at
Sentencing Phase.

b. Ineffective Assistance Trial & Appellate
Counsel.

Result: No. S133831, Denied    Date of Result: 4/19/06

IV.    Name of Court: California Supreme Court

Type of Proceeding: Writ of Habeas Corpus

Grounds raised (Be brief but specific):

a. Constitutional Infirmity in prior conviction
being used to enhance current sentence.

Result: No. S152716, Denied    Date of Result: 9/25/07

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____    No X

Name and location of court: _____

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS    - 5 -

1  need more space. Answer the same questions for each claim.

2      [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5      Claim One: California Department of Corrections and Rehabili-

6  tation (CDCR), has deprived petitioner of his Equal

7  Protection rights as guaranteed under the Fourteenth

8  Amendment to the United States Constitution.

9          (See statement of the case attached)

10

11

12

13  Supporting Facts: California State Prison Authorities have

14  adopted an invidious classification to petitioner's

15  disadvantage, by denying him an equal opportunity to

16  participate in a work training credit earning assign-

17  ment, and to reduce the length of his sentence by

18  earning day for day credits pursuant to Penal Code

19  section-2933 and section-2934. (Pen C.)

20          (See statement of facts attached)

21

22

23      If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25  This Claim/Ground is unrelated to the court proceedings for

26  which petitioner was convicted and sentenced. Additionally,

27  this Claim/Ground could not have been discovered until

28  physically placed in state prison.  (See attached)

PET. FOR WRIT OF HAB. CORPUS          - 6 -

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2  are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3  of these cases:

4    (See memorandum of points and authorties attached)

5  _____

6  _____

7  Do you have an attorney for this petition?          Yes____     No  X

8  If you do, give the name and address of your attorney:

9  _____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on  July 20  , 2008

14         Date                          Signature of Petitioner
                                         MAURICE E. CAMPBELL  #E-10493

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

1  MAURICE EDWARD CAMPBELL
   CDCR No. E-10493
2  CTF C-243
   P.O. BOX 689
3  Soledad, CA 93960
     In Pro Per,
4

5

6

7              IN THE UNITED STATES DISTRICT COURT

8          FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10 MAURICE EDWARD CAMPBELL )    Case No. _____
          Petitioner,       )
11                          )   PETITION FOR WRIT OF
          v.                )   HABEAS CORPUS 28 U.S.C.
12                          )   2254, MEMORANDUM OF
   BEN CURRY, (Warden)       )   POINTS AND AUTHORITIES.
13        Respondent,        )
                            )
14 _____)

15

16 TO THE HONORABLE COURT:

17     Petitioner, MAURICE EDWARD CAMPBELL, is presently

18 incarcerated at Correctional Training Facility (CTF), and is

19 in the custody of Ben Curry, Warden under the Secretary of the

20 Department of Corrections and Rehabilitation (CDCR). Petitioner

21 was convicted on January 24, 2003, and sentenced to a term of

22 15 years on March 13, 2003, for 1-count burglary in violation

23 of Penal Code section-459. This conviction also entailed prior

24 conviction enhancements within the meaning of Pen C. sections-

25 667 (A)(1), 667 (b)÷(i), 667.5 (B), 1170.12. (See Abstract of

26 Judgment attached as Exhibit-A)

27 //

28

                              1.

This petition alleges that petitioner is being deprived of his constitutional right to equal protection while in state custody. This Court has jurisdiction under 28 U.S.C. 2254. The petition is timely and petitioner has exhausted all administrative remedies within CDCR, as well as the exhaustion of remedies available in the court's in California, including the presentation of this claim in the state Supreme Court.

This petition should not be deemed a second or successive petition because it is the first challenge towards Respondents determination of the duration of petitioner's confinement. This petition alleges a colorable claim for relief under 28 U.S.C. 2254. Because the state court's failed to hold an evidentiary hearing or make a finding of facts that would have been crucial and indispensable to a fair development of the issues presented, and because no state court has issued a reasoned opinion on the merits of this claim, then the presumption of correctness can not attach. Thus, an independent or de-novo review is warranted.

Dated: July  20th  , 2008

Respectfully Submitted

MAURICE EDWARD CAMPBELL
Petitioner

//
//
//

2.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Petitioner was initially received by CDCR arriving at North Kern State Prison reception center on April 29, 2003. Approximately two months later on June 25, 2003, petitioner was transferred to Centinela State Prison (CEN). On July 29, 2003, initial classification was conducted, at which time custody was established and Petitioner was placed on an assignment waiting list. (See 128-G classification chrono attached as Exhibit-B).

Petitioner was waiting approximately four months to be assigned when the Department issued an instructional-memorandum to all adult prisons statewide, entitled, "The Fiscal Year 2003/2004 Budget Act & New Educational Program". This new program became operative on November 1, 2003, resulting in the implementaion of educational programmming for inmates in reception centers and the expansion of these programs to general population throughout adult state prisons. Since it's inception this new program has become more commonly known as the "Bridging Educational Program" (BEP). (See CDCR memorandum attached as Exhibit-C).

Following the inception of (BEP), petitioner submitted an administrative appeal (602), requesting an equal opportunity to participate in (BEP), and to enjoy the benefit of reducing his credit earning status from the 80% ratio to the more favorable 50% credit earning rate under Pen C. 2933. The 602 was initially denied by the assignment Lieutenant, who after

3.

1  consulting with records office personnel, found that petitioner
2  was ineligible for (BEP) and that he would be placed in an
3  assignment upon reaching the top of the waiting list. The (602)
4  was then submitted for second level review which resulted in a
5  subsequent denial, finding that (CEN) is not being selective
6  in it's assignment's to (BEP) becuase eligibility is handled
7  solely by Sacramento. (See the Departments initial eligibility
8  criteria attached as Exhibit-D). The (602) was then submitted
9  for third and final level review which agreed with lower level
10  decision and found that petitioner was not entitled to any
11  assignment. (See adminstrative appeal (602) No.CEN-D-04-00840
12  attached as Exhibit-E)

13      On May 12, 2005, approximately four months after 602 No.
14  CEN-D-04-00840, was denied at final level review, petitioner
15  submitted a second or successive (602), requesting to be
16  assigned to (BEP) or any other full time credit earning
17  assignment. In section-B of this second (602), petitioner
18  specifically referred to the Departments eligibility criteria
19  and requested to invoke the right to a Pen C. 2934 waiver.
20  However, this second (602) was denied at the informal level,
21  finding that petitioner is not on a waiting list for (BEP) but
22  instead had been assigned to Vocation #SER 4015-489, on May
23  27, 2005. (See administrative appeal 602 No. CEN-D-05-1025
24  attached as Exhibit-F).

25      Although petitioner was assigned to vocation on May 27,
26  2005, he was never issued a Gate-Clearance-Pass, and
27  consequently he was never afforded an opportunity to

28

participate a single day in this or any other vocation
assignment. Approximately nine months later petitioner
requested to be reassigned and on February 11, 2006, he was
assigned to facility Barber position #BAR-D-202. However,
because facility-D was on modified lockdown, petitioner's
first day of actual work as a barber did not commence until
March 30, 2006. Unfortunately petitioner's assignment to the
barber position was abruptly ended upon being involuntarily
transferred to San Quentin prison on May 2, 2006.

Following transition layover, petitioner arrived at San
Quentin on May 3, 2006, and placed in Administrative-
Segregation where he remained housed for approximately four
months before being transferred. On September 20, 2006,
petitioner was transferred to Correctional Training Facility
(CTF-SOLEDAD), and on June 20, 2007, petitioner submitted a
third (602) requesting to execute a Pen C. 2934 waiver, in
order to participate in (BEP) or any other assignment and be
granted day for day credits under Pen C. 2933. However, the
(602) was denied on all levels of administrative review
including third and final level, which denied the appeal and
incorrectly stated that petitioner was serving 85% of his
sentence. This concludes exhaustion of all administrative
remedies. (See administrative appeal (602) No.CTF-07-02493
attached as Exhibit-G).

//

//

//

STATEMENT OF CASE

On March 1, 2006, petitioner filed a petition for writ of habeas corpus in the Superior Court of California, in the County of Imperial. Petitioner alleged he was being deprived of equal opportunity to participate in (BEP) or other work assignment that would allow him to earn day for day work credits pursuant to California Code of Regulations Title 15 section-3044 (CCR 15), and Pen C. 2933. On April 10, 2006, the superior court denied the petition and found that the petition failed to state a prima facie claim. (See Superior Court No. EHC00724 Order Denying Petition attached as Exhibit-H).

Following the denial in the superior court petitioner filed a petition for writ of habeas corpus in the Califonia Court of Appeal for the Sixth Appellate District, raising the same claim that was presented in the superior court. Again petitioner made specific allegations of equal protection violations but the court of appeal denied the petition without an opinion April 25, 2007. (See Cal Court of Appeal No.H031353 Order Denying Petition attached as Exhibit-I).

Petitioner then submitted a petition for writ of habeas corpus in the California Supreme Court, raising the same claim that was presented in the lower court's. Petitioner alleged that (CDCR) was depriving petitioner of his rights guaranteed under the State and Federal Constitution Equal Protection Clause. However, the California Supreme Court denied the petition without opinion. (See Cal Supreme Court No.S152665 Order Denying the Petition attached as Exhibit-J).

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

CDCR allows prisoners to reduce their sentence by one day for every day served working or participating in educational programs pursuant to CCR 15-3044, and the enabling statute, Cal Pen C. 2933. Additionally, CDCR allows prisoners whom are serving a determinate term of imprisonment to sign an irrevocable waiver pursuant to CCR 15-3043.1, and enabling statute Cal Pen C. 2934, waiving their right to receive behavior or participation credits and thereafter become eligible for day for day credits under Pen C. 2933. (See waiver attached to Ex-G).

At the outset of petitioner's arrival to CDCR in 2003, the Department adopted (BEP), and established guidelines for eligibility, including but not limited to "mixed-credit-codes", and "Pen C. 2934 waiver". (Ex-D). However, (BEP) has since become a regulation in 2006. (See CDCR notice of change to regulations attached as Exhibit-K). (BEP) is similar to a correspondence course which focuses primarily on life skills rather than traditional subjects like math and reading. It is an assignment which is made made available to prisoners in general population, as well as those housed in reception centers for the purpose of initiating credit earning status pursuant to CCR 15-3044 and Pen C. 2933.

The problem with (BEP) is that the eligibility require-ments discriminate between prisoners whom are similarly situated, and there is evidence that this system is not related to any legitimate state interest.

8.

As previously explained by the Assistant Superintendent
of prison education, Janet Blaylock..."the main purpose of
Bridging was to get them credit earning status quickly." (See
San Francisco Chronicle Newspaper article attached as
Exhibit-L). Futhermore, Senate Majority Leader Gloria Romero
who sits on the committee which holds hearings on prison
education said..."the Bridging program is a front, a fake, a
way CDCR can say, we are offering education." (See Prison
Legal News article about BEP attached as Exhibit-M). Based on
the aforementioned it becomes evident that CDCR policy serves
a purpose other than education or rehabilitation.

## ARGUMENT

CDCR HAS ADOPTED A DISCRIMINATORY CLASSIFICATION TO
PETITIONER'S DISADVANTAGE BY DEPRIVING HIM THE SAME
STATUTORY BENEFITS GRANTED TO SIMILARLY SITUATED
PRISONERS. THIS EQUAL PROTECTION CLAIM IS COGNIZABLE
UNDER A RATIONAL BASIS SCRUTINY.

Petitioner avers that CDCR has utilized the Pen C. 2934
waiver for selected prisoners whom were sentenced to serve a
determinate term of imprisonment to become eligible to earn
credits under Pen C. 2933, even though these prisoners were
limited in the accrual of a 15 or 20 percent credit earning
ratio by virtue of their conviction of either a serious or
violent felony. (See Pen C. 667 (c)(5) & 1170.12 (a)(5).)
Upon receiving the benefit of the 2934 waiver prisoners are
able to by-pass traditional waiting list and become eligible
for priority assignment, including (BEP).

When CDCR invokes the 2934 waiver for a prisoner it is
usually recorded on a CDC form-188 Legal Status Summary (LSS),

which contains the commitment and release status of a prisoner.
Petitioner has obtained several examples of prisoners whom are
similarly situated by limitations in the accrual of credits by
virtue of their convictions but unlike petitioner, were
afforded the opportunity to sign a Pen C. 2934 waiver. To
demonstrate this fact petitioner is submitting copies of
authentic departmental documentation. (See CDC forms-188 LSS
attached as Exhibit-N).

Although reviewer in petitioners initial administrative
appeal stated..."appellant is ineligible for BEP because
eligibility is handled solely by Sacramento", it is unclear
who in Sacramento is authorized to make such a determination.
(Ex-E). It is equally unclear how reviewer in petitioners
successive administrative appeal can justify a policy which
finds violent offenders more deserving to sign the 2934 waiver
and become eligible for credit earning under Pen C. 2933,
especially when petitioner has absolutely no history of
violence. Petitioner's CDC form-188 LSS is attached to (Ex-G).

A prison's administrative grievance proceeding can in no
way be the main event in a prisoners attempt to have a
constitutional violation redressed. Ngo v. Woodford 403 F.3d
620, 628 (9th Cir 2005). Unfortunately, petitioner faired no
better in state court because he was never given the
opportunity to present argument or offer evidence in support
of his contentions. Because petitioner has not had his day in
court, he should not be bound or concluded by any state court
judgment. see Taylor v. Maddox 366 F.3d 992 (9th Cir 2004).

1  Moreover, petitioner requested but was denied an evidentiary

2  hearing, resulting in the unreasonable determination of

3  controverted facts, and therefore state court is not entitled

4  to a presumption of correctness. See Earp v. Oronski 431 F.3d

5  1158, 1167 (9th Cir 2005).

6      The Equal Protection Clause of the Fourteenth Amendment

7  commands that no state shall deny to any person within its

8  jurisdiction the equal protection of the laws, which is

9  essentially a direction that all persons similarly situated

10  should be treated alike. Plyler v. Doe 457 U.S. 202, 216, 102

11  S.Ct. 2382, 2394 (1982). The Equal Protection Clause requires

12  more of a state law than nondiscriminatory application within

13  the class it establishes. It also imposes a requirement of

14  some rationality in the nature of the class singled out. See

15  Rinaldi v. Yeager 384 U.S. 305, 308-309, 86 S.Ct. 1497 (1966).

16  Otherwise, the state could arbitrarily discriminate between

17  similarly situated persons simply by classifying their conduct

18  under different criminal statutes. See Lawrence v. Texas 539

19  U.S. 558, 582, 123 S.Ct. 2472 (2003). The state may not rely

20  on a classification whose relationship to an asserted goal is

21  so attenuated as to render the distinction arbitrary or

22  irrational. City of Cleburne Texas v. Cleburne Living Center

23  473 U.S. 431, 446-447, 105 S.Ct. 3249, 3258 (1985).

24      Petitioner reiterates, that he is a member of a class to

25  whom CDCR has denied a statutory benefit granted for other

26  prisoners. This discriminatory classification violates equal

27  protection because in granting worktime credits there is no

28

rational basis to distinguish between petitioner who, although willing to work or participate in any assignment, was denied that opportunity. In comparison to prisoners mentioned in Ex-N, who signed a Pen C. 2934 waiver and became eligible for priority assignment, as well as day for day credits under Pen C. 2933. (See petitioner's declaration attached as Exhibit-O).

Application of the "rational basis standard", requires a two step analysis. See Hoffman v. United States 767 F.2d 1431 at p. 1436 (9th Cir 1985). citing Western & Southern Life Insurance v. State Board of Equalization 451 U.S. 648, 668, 101 S.Ct. 2070, 2083 (1981). First, we must determine whether the challenged legislation has a legitimate purpose. Id Second, assuming a legitimate purpose, we must decide whether the challenged classification promotes that purpose. Id at p. 1436-37. There is a legitimate purpose behind the legislative intent in Pen C. 2933 & 2934. However, there is no justification for the invidious classification of petitioner because there is no rational relationship between a legitimate purpose and the disparate treatment.

In a case directly on point, a Califonia state prisoner challenged the same postsentence credit scheme under the Equal Protection Caluse. Basing its decision on a "rational basis standard", the United States District Court for the Northern District of California found, that state policy of denying Pen C. 2933 sentence reduction credits for worktime spent in educational/work programs for convicted murders, but allowing would be assassins or habitual offenders, same credits was not

1  rationally related to any legitimate goverment objective, and

2  therefore, the allocation of worktime credits violated equal

3  protection. Brodheim v. Rowland 783 F.2d 1245, 1251 (Cal ND

4  1991). Similarly, the California Court of Appeal granted a

5  state prisoners habeas corpus petition, finding that the

6  refusal of state prison authorities to retroactively apply a

7  rule change authorized by Pen C. 2933, granting day for day

8  credits violated equal protection because there was no rational

9  basis for distiguishing between similarly situated prisoners.

10 In re Randolph 215 Cal.App.3d 790, 263 Cal.Rptr. 768 (1989).

11 The Randoph court further found that Pen C. 2933 did not

12 require actual labor be performed to earn credits. Id at p.

13 794, 263 Cal.Rptr, at p. 771. See also In re Carter 199 Cal.

14 App.3d 271, 244 Cal.Rptr 648 (1988), finding that state

15 prisoner was entitled to receive one for one credits under Pen

16 C. 2933, when he was assigned a credit qualifying job but

17 through no fault of his own, was not able to start work. Id at

18 p. 273, 244 Cal.Rptr at p. 649. Cf. In re Player 146 Cal.App

19 4th 813, 827 (2007).

20    Petitioner has retained his A1/A work-group status since

21 becoming initially assigned on May 27, 2005. Additionally,

22 Petitioner has not refused to work or participate in any credit

23 earning assignment, nor has he suffered from any disciplinary

24 infraction which would prevent him from doing so. While it is

25 true that statutes are presumed to be constitutional and

26 legislation is presumed to be rational, the same cannot be

27 said for CDCR's policy which grants these statutory benefits

28

13.

1  for some prisoners, while capriciously and arbitrarily denying

2  these same statutory benefits for petitioner. Cf. Lindsey v.

3  Normet 405 U.S. 56, 77-79, 92 S.Ct. 862, 876-877 (1972).

4  Consequently, because there is no rational relationship between

5  a legitimate state interest and classifying petitioner

6  differently then the prisoners mentioned in (Ex-N), in such a

7  way as to provide shorter sentences for those prisoners, thus

8  the state policy is not rationally related to any legitimate

9  goverment objective, and therefore, the allocation of worktime

10 credits under Pen C. 2933, violates petitioner's right to equal

11 protection of the law, as guaranteed under federal and state

12 Constitutions. (See U.S. Const 14th Amend; Cal Const., art. I

13 section-7).

14

## CONCLUSION

15

16     For all the foregoing reasons stated herein, the prayer

17 for relief sought should be granted at this time.

18

19 Date;__July 20_____, 2008

                                    Rspectfully Submitted

20                              By   ME Cll

21                                   Maurice Edward Campbell
                                     CDCR # E-10493
22                                   In Propria Persona,

23

24

25

26

27

28

14.

<u>VERIFICATION</u>

I, Maurice Edward Campbell, hereby declare amd affirm under the penalty of perjury that all of the foregoing is true and correct, and that I am a party to this instant action to wit, the petitioner.

Executed on this __20th__ day of __July__, 2008.

Respectfully Submitted,

By: _M.E. Cpbll_

Maurice Edward Campbell
CDCR #E-10493   C-243 L
P.O. BOX 689
Soledad, CA 93960

15.

# EXHIBIT A

ABSTRACT OF JUDGMENT – PRISON COMMITMENT – DETERMINATE
SINGLE, CONCURRENT, OR FULL-TERM CONSECUTIVE COUNT FORM
*[Not to be used for multiple count convictions or for 1/3 consecutive sentences]*

000075

SUPERIOR COURT OF CALIFORNIA, COUNTY OF: LOS ANGELES

CR-290.1

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA vs.<br>DEFENDANT: CAMPBELL, MAURICE EDWARD    DOB: 07-25-60<br>AKA:<br>CII#: A05522335<br>BOOKING #: 7262562    ☐ NOT PRESENT | CASE NUMBER<br>GA049519-01 | LOS ... COURT<br>MAR 2 1 2003<br>... CLERK<br>... DEPUTY |
| COMMITMENT TO STATE PRISON<br>ABSTRACT OF JUDGMENT    ☐ AMENDED<br>ABSTRACT | | |

| DATE OF HEARING<br>03-13-03 | DEPT. NO.<br>NE E | JUDGE<br>TERI SCHWARTZ |
|---|---|---|
| CLERK<br>JENNIFER BEEAL | REPORTER<br>ROBERT LEWITT | PROBATION NO. OR PROBATION OFFICER<br>X-911954 |
| COUNSEL FOR PEOPLE<br>STEVEN M BARSHOP | | COUNSEL FOR DEFENDANT<br>DENNIS YAMAMOTO, DPD    ☐ APPTD. |

1. Defendant was convicted of the commission of the following felony:

| CNT. | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO./DATE/YEAR) | CONVICTED BY | | | TIME IMPOSED | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | JURY | COURT | PLEA | TERM (L,M,U) | YRS. MOS. |
| 01 | PC | 459* | 1ST DEG RESIDENTIAL BURGLARY | 2002 | 01-24-03 | | | X | M | 8  0 |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| CNT. | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

3. ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 667.5(B) | 1 | 667.5(B) | 1 | 667(A)(1) | 5 | | | 7  0 |

4. ☒ Defendant was sentenced pursuant to PC 667 (b)-(i) or PC 1170.12 (two-strikes).

5. FINANCIAL OBLIGATIONS (including any applicable penalty assessments):

Restitution Fine(s): $200.00 per PC 1202.4(b) forthwith per PC 2085.5;  $200.00 per PC 1202.45 suspended unless parole is revoked.

Restitution per PC 1202.4(f): ☒ $3500.00 / ☐ Amount to be determined    to ☒ victim(s)*    ☐ Restitution Fund
(*List victim name(s) if known and amount breakdown in item 7 below.)

Fine(s): $10.00 per PC 1202.5. $_____ per VC 23550 or _____ days. ☐ county jail ☐ prison in lieu of fine ☐ CC ☐ CS

Lab Fee: $_____ per HS 11372.5(a) for counts _____ . ☐ Drug Program Fee of $150 per HS 11372.7(a).

6. TESTING:  a. ☐ AIDS pursuant to PC 1202.1    b. ☐ DNA pursuant to PC 296    c. ☐ other (specify):

7. Other orders (specify):

8. TOTAL TIME IMPOSED EXCLUDING COUNTY JAIL TERM:    15  0

9. ☐ This sentence is to run concurrent with (specify):

10. Execution of sentence imposed
   a. ☒ at initial sentencing hearing.
   b. ☐ at resentencing per decision on appeal.
   c. ☐ after revocation of probation.
   d. ☐ at resentencing per recall of commitment. (PC 1170(d).)
   e. ☐ other (specify):

11. 

| DATE SENTENCE PRONOUNCED<br>03-13-03 | CREDIT FOR TIME SPENT IN CUSTODY<br>482 | TOTAL DAYS:<br>INCLUDING: | ACTUAL LOCAL TIME<br>322 | LOCAL CONDUCT CREDITS<br>160 | ☐ 4019<br>☐ 2933.1 | TIME SERVED IN STATE INSTITUTION:    DMH    CDC    CRC |
|---|---|---|---|---|---|---|

12. The defendant is remanded to the custody of the sheriff ☒ forthwith    ☐ after 48 hours excluding Saturdays, Sundays, and holidays.
   To be delivered to    ☒ the reception center designated by the director of the California Department of Corrections.
   ☐ other (specify):

CLERK OF THE COURT: I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

| DEPUTY'S SIGNATURE | DATE<br>03-21-03 |
|---|---|

This form is prescribed under PC 1213.5 to satisfy the requirements of PC 1213 for determinate sentences. Attachments may be used but must be referred to in this document.

Form Adopted for Mandatory Use
Judicial Council of California
CR-290.1 (Rev. January 1, 2003)

ABSTRACT OF JUDGMENT – PRISON COMMITMENT – DETERMINATE
SINGLE, CONCURRENT, OR FULL-TERM CONSECUTIVE COUNT FORM

Penal Code,
§§ 1170,1213, 1213.5

# EXHIBIT    B

NO. __E10493__                    NAME  CAMPBELL          STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS
                                                                      CDC-128G (Rev. 12/91)

Custody: CLOB        CS: 21      WG/PG: A2B  EFF: 6/25/03
RelDate: 2/13/2014-EPRD                Reclass: 8/03          Assignment: U/A
Action:
INITIAL:   RELEASE TO FAC D, G.P. CLOB CUSTODY, A2B EFF 6/25/03, P/O SS PRE VOC W/L.
P/V: INELIGIBLE, NO MSF, NO GYM FHC

Inmate Campbell made a personal appearance before FAC D UCC on this date for the purpose of Initial Classification.  "S" is a 43 year old, white, multi-termer, PV-WNT committed to CDC for 15 years from Los Angeles County for the commitment offense of Poss C/S, Burglary.  "S" was received by CDC on 4/29/03 and CEN on 6/25/03 from NKSP for Level III placement.  This transfer was not adverse.  Prior Prison Terms are noted: Multi-Termer.  Prior Arrest history consists of: Loitering, Grand Theft, Assault to Commit Rape 1980 D.A. Rejected it.  GTA,.  "S" has no history of arson/escapes/computer crimes noted.  Sex offenses noted: D.A. rejects noted 1980 arrest for Assault to Commit Rape.  "R" suffix is deemed inappropriate at this time.  Arrest Report was ordered from L.A.S.O.  1202.05 PC Child Victim Visiting Restrictions: Yes.  "S" is currently ineligible for Family Visits pursuant to AB 96/08 and CCR Title 15.  "S" has Registration/Notification requirements noted pursuant to PC. 296/11590 H&S.  "S" was ordered a Restitution Fine by Los Angeles County on Case No. GA049519, in the amount of: $3,700.00.  CDC 812 indicateds no enemy concerns/gang affiliation/membership.  Confidential file is clear.  Disciplinary History consists of CDC 115' for: 11/15/90-Stimulants & Sedatives.  "S" does not meet the criteria for an MDO referral.  "S" was screened for single cell housing needs and does not meet the criteria.  "S" is not 17 years of age or under.  "S" has no Holds, Warrants, or Detainers noted:  "S" is Medically Cleared for FD/CUL per CDC 128C dated: 5/1/03.  TBAC is 22 per CDC 128C dated 5/2/03.  "S" has no Mental Health concerns or level of care CCCMS/EOP noted.  "S" claims Work Skills as: Stage Hand, Carpet Layer.  "S" is not eligible for MSF/CAMP/CCRC/CCF/RJDSAP/Restitution Center due to custody level, CLOB TTS.  "S" prior WG/PG was NA.  Committee elects to release "S" to FAC D3 GP, establish CLO B custody, A2/B WG/PG EFF 6/25/03, P/O S/S PV W/L.  "S" was advised of provisions governing grooming standards per AB 97-12 dated 10/16/97.  "S" stated he understood and would comply.  "S" participated in Committee, stated he understood all actions and agreed with Committee's decision.  "S" was advised of his right and the method to appeal this Committee's decision.

COMMITTEE MEMBERS: Y P. PHILLIPS        O. GARCIA, CCII          E. RUIZ, CCI
                        CHAIRPERSON                              RECORDER

DATE: 7/29/03 (ER/ir)              Classification  UCC      FAC  D          INST: CEN

# EXHIBIT     C

State of California                                                    Department of Corrections

# Memorandum

Date  :  October 22, 2003

To    :  ALL GENERAL POPULATION INMATES

Subject:  EDUCATION MODEL CHANGE

The Fiscal Year 2003/2004 Budget Act requires that the California Department of Corrections (CDC) implement education programming for "day for day" eligible inmates in Reception Centers, while expanding education programs in General Population institutions.

The expansion will be accomplished via a distance education model. Additionally, Arts in Corrections (AIC) will include assignments that will establish a creative arts component to enrich inmate programming. AIC will no longer be available as a leisure time activity.

Using the new model, CDC will provide educational programming to more inmates, better prepare inmates for release back to society and provide earlier assignment to a credit-qualifying program. Implementation of the program will occur on November 1, 2003.

Inmates assigned to the new education model will receive an orientation packet of materials. Instruction will be at the inmate's appropriate literacy level and will include Education Assessment, Anger Management, Cognitive Based Re-Entry Orientation, Life Skills, and an Individual Training Plan.

- Inmates already assigned jobs will not be displaced and will continue to work.
- Inmates not day for day eligible who lose their assignment for adverse reasons will be considered for reassignment after inmates who are eligible for priority assignment.
- Inmates assigned to the distance learning program will continue their individualized program until traditional academic, vocational, AIC, or work becomes available.
- Inmates who are day for day eligible and waiting for jobs (A2), will be prioritized for assignment, those with earliest release dates considered first.
- Inmates not day for day eligible (15%, 20%, Life Term) will be considered for assignment after all day for day inmates have been assigned.
- Inmates serving shorter terms will be given priority for assignment in traditional vocational, academic and support services.
- Inmates who transfer to Centinela on or after November 1, 2003 and are eligible for priority assignment may be directly assigned to a traditional job or the new distance education/AIC program.
- Inmates at the Minimum Support Facility will be eligible to participate in the AIC and distance learning education program. Additionally, day for day eligible inmates will be given priority for all job assignments.

G. J. GIURBINO
Warden
Centinela State Prison

# EXHIBIT     D

The following inmates are ELIGIBLE for the bridging program:

** All New Commitment (NC) and Parole Violater Returned With a New Term (PWNT) inmates who are serving a non-violent, non-strike Determinate Sentence Law (DSL) term (commitment offense on or after Jan.1, 1983, or signed a PC Section-2934 waiver). This commitment type is entered in the Offender Based Information System (OBIS) as a Credit Code 1.

** All NC and PWNT inmates serving a DSL term with mixed credit codes where at least one period is a credit code 1. A mixed credit codes case consists of a DSL term with consecutive counts / enhancements that earn different rates of credits.

** All parole violaters returned to custody (PRTC) and parolees returned to custody pending revocation proceedings (PENDREV).

The following inmates are NOT ELIGIBLE:

** All NC and PWNT offenders whose credit is limited to 20% (Credit Code 3), 15% (Credit Code 4 or 6) or zero credit (Credit Code 5). In other words, any offender serving a DSL term that is not credit code 1.

** Parole violaters who have been deemed ineligible to receive worktime credit by the Board of Prison Terms (BPT).

** All inmates who are serving a life term (Credit codes 31-36), including Lifers with consecutive DSL terms that are credit code 1.

As for the existing population at the mainline institutions:

"Each mainline institution will be provided with a list from Offender Based Information System (OBIS) of inmates who are credit code 1. This list will be used for the initial entry in the Automated Release Date Tracking System (ARDTS). Once the eligible inmates are entered into ARDTS and a missing PC Section-2933 eligibility list shall be generated. The Correctional Case Records Analyst (CCRA) shall research the list to determine PC Section-2933 credit eligibility. The results shall be provided to staff at the ARDTS desk for entry into the system."

# EXHIBIT "E"

To: Assignment office Sergeant, Masters and or Lieutenant

STATE OF CALIFORNIA

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

6/25/03
DEPARTMENT OF CORRECTIONS
A2B
Category
13

Location:  Institution/Parole Region

1. V.T. CEN-A    Log No. D4-0890

2.

STS

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| CAMPBELL, MAURICE | E10493 | A2B Involuntary unass | D-2-146 up |

**A. Describe Problem:** I Maurice Campbell ascertain that I am entitled to participate in any full time credit qualifying assignment either directly or through the new distance education program / AIC. In accord to title 15 sec-3044 work/training incentive group, pursuant to Penal code sec-2933. Review of my C-file would reveal an excellent work performance record. Moreover I was placed on the support service waiting list several months prior to the implementation of the new educational distance program. I have submitted several requests to assignment office & counselor regarding

If you need more space, attach one additional sheet. - This issue.

**B. Action Requested:** To be afforded an opportunity to participate in any full time credit qualifying assignment or support service job. (See Institutional Notification ch 7 11/05/03 subject: Education model change) (C.D.C. Memorandum 10/22/03 subject: Education model change.

Inmate/Parolee Signature: M.C. Campbell     Date Submitted: 4/30/04

**C. INFORMAL LEVEL (Date Received: _____)**

Partially Granted Currently you are #179 on Support services wait list and #154 on vacations. When inmates arrive at this institution they are merged into various wait lists, according to their NG/PG effective dates. Inmates may arrive after you with better WG/PG dates both than you, placing them ahead of you on the list. Inmates are hired in order as vacancies occur. Keeping in mind ethnic balance & the legislature in which inmates who are "day for day" eligible are priority hires. The list of A2B inmates eligible for this bridging program consists of 31 inmates, you are not on this list.

Staff Signature: _____     Date Returned to Inmate: 5/24/04

**D. FORMAL LEVEL**

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Received informal response on 6/01/04. It is necessary to initiate this appeal to the formal level because of the erroneous reasoning and inadequate explanation for denying this request, is not based on any documentation or authority. And because the implementation of this selective policy is in violation my basic constitutional rights.

Signature: M.C. Campbell     Date Submitted: 6/06/04

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

CENTINELA INMATE APPEALS

1 of 7

First Level   ☐ Granted   ☐ P. Granted   ☒ Denied   ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: **JUN 15 2004**   Due Date: **JUL 2 8 2004**

Interviewed by: _____

_____
_____
_____
_____
_____

Staff Signature: _____   Title: LT(A)   Date Completed: 6/28/04
Division Head Approved:
Signature: _____   Title: AW-CS   Returned Date to Inmate: **JUL 09 2004**

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Recieved 1st Level denial on 7/23/04
This Facility has adopted a selective, unequal policy denying me an opportunity to be assigned to a job, vocation and or (New Educational Program, implemented by the Department allowing inmates [same but not q] to earn day for day credits to individuals who would otherwise be ineligible) In addition I have been continually by-passed on the assignment waiting list for over a year.

Signature: M.C. Cyhill   Date Submitted: 7/28/04

Second Level   ☐ Granted   ☐ P. Granted   ☒ Denied   ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: **JUL 30 2004**   Due Date: **AUG 2 7 2004**

☐ See Attached Letter

Signature: _____
Warden/Superintendent Signature: _____   Date Completed: _____
Date Returned to Inmate: 8-1-04

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

I've never stated that I was sentenced to do 50% of my term of confinement. This institution and C.D.C. has implemented an early release program (Fiscal year 2003/2004 Budget Act /Bridging Program) which allows inmates that are serving 80% & 85% of their term of confinement, to earn a 50% reduction in their sentence, those inmates who have been selectively chosen are assigned immediately to the program thus by-passing the traditional waiting list, which I have been on for over a year. Budgetary and overcrowding problems are no excuse in denying me equal opportunity of a similarly situated class of prison inmates, it is discriminatory and prejudicial and conflicting with my liberty interest.

Signature: M.C. Cyhill   Date Submitted: 8/13/04   Due Process.

For the Director's Review, submit all documents to:  Director of Corrections
                                                       P.O. Box 942883
                                                       Sacramento, CA 94283-0001
                                                       Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:  ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

## GROUNDS FOR RELIEF

Petitioner avers that the manner in which CDCR has carried out his sentence is unconstitutional and subject to review on habeas corpus for the following reasons:

RESPONDENT HAS ADOPTED A DISCRIMINATORY CLASSIFICATION TO PETITIONER'S DISADVANTAGE BY DENYING HIM AN EQUAL OPPORTUNITY TO EXECUTE AN IRREVOCABLE WAIVER PURSUANT TO CALIFORNIA PENAL CODE 2934, FOR THE PURPOSE OF MODIFYING PETITIONER'S LIMITED CREDIT EARNING STATUS BY EARNING THE MORE GENEROUS DAY FOR DAY CREDIT EARNING UNDER CALIFORNIA PENAL CODE 2933. THIS INVIDIOUS CLASSIFICATION DEPRIVES PETITIONER OF THE SAME STATUTORY BENEFITS AFFORDED TO OTHER PRISONERS OF THE SAME CLASS. A VIOLATION OF THE EQUAL PROTECTION CLAUSE UNDER STATE AND FEDERAL CONSTITUTION.

## PRAYER FOR RELIEF

WHEREFORE, petitioner prays for relief as follows:

1. For a writ of habeas corpus to issue forthwith directing the Secretary of CDCR and petitioner's immediate custodian, Warden, Ben Curry, to bring petitioner before the appropriate Court of jurisdiction at a designated time to show then why the statutory benefits should not be extended for petitioner. Specifically the request to sign a Pen C. 2934 waiver and to recalculate petitioners release date to reflect worktime credits under Pen C. 2933, commencing upon initial assignment or upon arrival date to CDCR, so as to comport with Constitutional standards.

2. Grant any other relief this Court deems appropriate and in the interest of justice.

Respectfully Submitted,

Date: July 20    , 2008

By: _MEChll_
Maurice Edward Campbell
Petitioner In Pro Per.

7.

*State of California*                                                              Department of Corrections

# Memorandum

Date   :    July 8, 2004

To     :    **INMATE CAMPBELL**
            **E10493/D2-146U**

Subject :   **CEN-D-04-00840**
            **FIRST LEVEL RESPONSE**

APPEAL DECISION:    DENIED

APPEAL ISSUE:    **INMATE WORK TRAINING INCENTIVE PROGRAM**

**APPEAL RESPONSE:**    Your appeal, the attachments, California Code of Regulations (CCR) Title 15 and California Department of Corrections Operations Manual (DOM) were reviewed.

You contend you have been denied the opportunity to participate in any Work Program Assignment that would allow you to change your Work Group/Privilege Group (WG/PG) status to A1A, and earning day for day credits to decrease your time in custody.    You further believe you have been by-passed for work assignments and base this belief on your having observed inmates assigned to jobs, even though they arrived at Centinela State Prison after you.    You are requesting to be afforded the opportunity to participate in any full time credit-earning assignment or Support Services Program.

On Monday, June 28, 2004, M. Masters, Correctional Lieutenant (A), interviewed you regarding your appeal issues.    During the interview you informed Lieutenant Masters that if you are not reachable for a work assignment, your case should be presented before the Unit Classification Committee with the recommendation of placing you on A1A unassigned status.    You further state that you are willing to work and possess a positive work history.    Additionally, you feel you should not be punished or forced to serve a longer sentence simply because there are insufficient work assignments for Facility D inmates.

On June 28, 2004, Lieutenant Masters reviewed the Bridging/Arts in Corrections Program waiting list and after consulting with inmate Records Department confirmed that you are ineligible to participate in these programs.    Therefore, you must and will be hired for a position once you become reachable on the traditional waiting lists.

CEN-D-04-00840
FIRST LEVEL RESPONSE
Page 2

Currently you listed as number 135 on the Support Services Waiting list and number 155 on the Vocational Waiting List. Consequently the Inmate Assignment Office cannot assign you to a position at this time.

Per CCR Title 15, Section 3043.6 (2), which states: "An inmate transferred for non-adverse reasons shall retain their work/training and privilege group status." Therefore, inmates who arrived at CEN after you and have been placed into jobs were reachable on the waiting list on account of retaining their WG/PG status from their previous institution.    These inmates were transferred under non-adverse circumstances.

Based on the aforementioned, your appeal is, therefore, **DENIED.**

If you are dissatisfied with this decision, you may appeal to the Second Level by following the instructions on your appeal form.

M. MASTERS
Correctional Sergeant
Centinela State Prison

J. P. GONZALEZ
Associate Warden-Central Services
Centinela State Prison

cc: Appeals File
    Central File

3 of 7

State of California                                                                    Department of Corrections

# Memorandum

Date:     August 5, 2004

To:       Campbell, E-10493
          Centinela State Prison

Subject:  SECOND LEVEL APPEAL RESPONSE
                    LOG NO.:     CEN-D-04-00840

APPEAL DECISION: DENIED

ISSUE:

It is the appellant's position that he was sentenced to do fifty percent of his time and his
Earliest Possible Release Date does not reflect this fifty percent. He claims that it is not
his fault that CDC cannot provide him with a work assignment.

The appellant requests on appeal that he is given the opportunity to participate in any full
time credit qualifying assignment including the new bridging program.

INTERVIEWED BY: M. Masters, Correctional Lieutenant, at the First Level of Review.

REGULATIONS: The rules governing this issue are:

**California Code of Regulations, Title 15, Section (CCR) 3040.
Participation.**
        (a) Every able-bodied person committed to the custody of the
Director of Corrections is subject to an obligation to work as assigned by
department staff and by personnel of other agencies to whom the inmate's
custody and supervision may be delegated. This may be a full day of work,
education, or other program activity, or a combination of work and
education or other program activity.
        (b) Inmates assigned to a physical fitness program as part of a work
incentive program shall meet the same obligation/participation
requirements governing any other inmate assigned to a vocational,
educational, or work assignment.
        (c) A classification committee shall assign each inmate to an
appropriate work, education, vocation, therapeutic or other institution
programs in consideration of the:
        (1) Inmate's expressed desires and needs.
        (2) Inmate's eligibility for and availability of the desired work or
program activity.
        (3) Institution's security and operational needs.
        (4) Safekeeping of the inmate.
        (5) Safety of persons and the general public.
        (d) In lieu of an inmate's assignment to a mutually agreed upon
program as arrived at in a hearing before a classification committee; or
pending such a hearing; or pending assignment to a designated program; or

CAMPBELL, E-10493
CASE NO. 04-00840
PAGE 2

during any period when the designated program is temporarily suspended; or in the absence of the inmate's agreement to participate in any program activity, any able-bodied inmate may be assigned to perform any work deemed necessary to maintain and operate the institution and its services in a clean, safe and efficient manner.

(g) Work assignments, in lieu of enrollment and participation in education, vocational, therapeutic or other institution program assignments, may be made with or without the inmate's consent by a classification committee, a staff member designated as an inmate assignment officer, or by any staff member responsible for the supervision of an unassigned inmate.

## CCR 3043. Credit Earning.

Presentence. Credit for time served on a term prior to sentencing shall be awarded by the sentencing court pursuant to sections 2900.1, 2900.5 and 4019 of the Penal Code.

(a) Behavior. All inmates serving a determinate term of imprisonment for a crime committed before January 1, 1983, who have not waived the time credit provisions of Penal Code section 2931, shall be credited with a one-fourth reduction on their term of imprisonment, unless all or part of such good behavior credit is denied or forfeited as the result of disciplinary action in the amounts listed in section 3323. Such credit shall be calculated from July 1, 1977 or the date of reception by the department, whichever is later.

(1) Inmates sentenced under Penal Code section 190 to an indeterminate term of 15 years-to-life or 25 years-to-life and received by the department on or after May 27, 1987 shall be credited with a one-fourth reduction on their minimum eligible parole date, unless all or part of such good behavior credit is denied or forfeited as the result of disciplinary action in the amounts listed in section 3323.

(b) Participation. All inmates described in subsection (a) shall be credited with a one-twelfth reduction on their term unless all or part of such participation credit has been denied or forfeited as the result of disciplinary action for failure or refusal to participate and perform work and/or program assignments as ordered or directed.

(c) Work Time.

(4) Inmates serving a determinate term of imprisonment for a crime committed on or after January 1, 1983, or who have waived their right to behavior and participation credits as provided in Penal Code section 2934, may earn a reduction in their term of imprisonment from the date of reception by the department or effective date of the waiver. Such credit reduction may be earned for participation in work, educational or vocational training assignments.

(5) Case records staff shall process and calculate inmate time credits and release dates based upon information provided by the courts, program staff and work/training supervisors.

(A) Any classification or inmate appeal action affecting an inmate's release date, including a change in work group status or credit forfeitures and restorations, shall be forwarded to case records staff. Inmates shall be provided a copy of any change in their release dates.

(B) Case records staff shall compute worktime credits at six month intervals from the date of the most recent computation. The resultant new legal status sheet (LSS) shall be forwarded to the inmate. The inmate shall sign a receipt for each LSS provided.

(d) Life-term inmates.

CAMPBELL, E-10493
CASE NO. 04-00840
PAGE 3

> (1) Pursuant to California Penal Code Section (PC) section 2933, worktime credits shall be applied to reduce the minimum terms of life inmates sentenced only under PC sections 217.1(b), 667.7(a)(1) and PC 667.75.
> (2) Inmates sentenced to life terms with determinate sentence law (DSL) enhancements or with a consecutive DSL term shall, except where otherwise prohibited by law, be eligible to receive worktime credits on such terms pursuant to PC section 2933.
> (e) Jail confinement. A reentry inmate who is confined in a local jail pending an investigation or disciplinary action, shall be classified and placed in an appropriate work group pursuant to section 3045.1.

Appellant claims that he was sentenced to do fifty percent of his time and it is not his fault that CDC cannot provide him with an assignment. He requests that he be given the opportunity to participate in a full time credit qualifying assignment to include the new bridging program.

Penal Code 2933(b) states that, "Worktime credit is a privilege, not a right and must be earned." Appellant was sentenced to a definite period of time and eligible to earn half time. Until assigned, appellant has not earned any half time.

There is no requirement to see that an inmate is assigned within a certain period of time of arrival at an institution. An institution must make a reasonable attempt to assign an inmate to a work credit assignment. The institution has appropriately placed the appellant on appropriate waiting lists from which he may be assigned to a position when he reaches the top. The action of the institution is consistent with CDC rules governing this issue.

Appellant is further advised that the institution is not being selective in its assignments to the new bridging program as he claims. The institution does not designate which inmates qualify for the list. This is handled solely by headquarters staff in Sacramento.

<u>DECISION</u>: The appeal is denied.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

G. J. Giurbino
Warden
Centinela State Prison

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date: **JAN 1 4 2005**

In re: Campbell, E-10493
Centinela State Prison
P.O. Box 731
Imperial, CA 92251-0731

IAB Case No.: 0404651      Local Log No.: CEN 04-0840

This matter was reviewed on behalf of the Director of the California Department of Corrections (CDC) by Appeals Examiner Janet D. Peters, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that he was placed on a waiting list upon arrival to the Centinela State Prison (CEN), June 25, 2003. He has not received a work/training assignment. He contends that he was always available for a job so he should have been earning half-time credit a lot sooner. The appellant feels this is the fault of the institution. He is requesting credit for the educational bridging program which is one-half time.

**II   SECOND LEVEL'S DECISION:** The reviewer found that the institution placed him on a waiting list, June 25, 2003. It was determined that other inmates have earlier work dates than he. The appellant is not eligible for the bridging program. Considering the circumstances and the amount of time he has been on the waiting list, it is not unreasonable that he is #135 on the support services waiting list. The appeal was denied at the Second Level of Review.

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A. FINDINGS:** Inmates are not entitled to any work/training assignment. Being subject to an obligation to work does not mean that CDC is obligated to provide a work/training assignment. The appellant was on a waiting list for an assignment and will receive an assignment when he has reached the top of the waiting list. Although the appellant had unfortunately been waiting for a period of time, the institution is conforming to CDC rules concerning this matter. The appellant has presented an unconvincing argument to modify the Second Level decision.

**B. BASIS FOR THE DECISION:**
California Penal Code Section: 2933
California Code of Regulations, Title 15, Section: 3040, 3043, 3044
Deputy Director, Institutions Division, September 23, 2003, Memorandum: EDUCATIONAL PROPOSAL INVOLVING RECEPTION CENTER AND GENERAL POPULATION PROGRAMS/PRIORITY INMATE ASSIGNMENTS

**C. ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDC.

*T. Surges*

N. GRANNIS, Chief
Inmate Appeals Branch

cc:   Warden, CEN
Appeals Coordinator, CEN

# EXHIBIT "F"

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

| Location: | Institution/Parole Region | Log No. | | Category |
|---|---|---|---|---|
| 1. _____ | | 1. _____ | | _13_ |
| 2. _____ | | 2. _____ | | |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| CAMPBELL MAURICE | E-10493 | A-2 Involuntary Unass | D-2-111 |

A. Describe Problem: Appellant has an absolute right to appeal any departmental policy imposing an adverse effect. Appellant arrived here at centinela on 6/25/03 and has remained disciplinary free in the custody of the Dept for over two years. Appellant has remained involuntary unassigned for over two years. However appellant submitted an inmate appeal to the assigment office, which was subsequently denied at the Directors level. see— "Inmate Appeal NO.CEN-04-0840., This is appellants second appeal to Records The first was sent via institutional mail to the appeals coordinator on—

If you need more space, attach one additional sheet. — 5/11/05 but appellant has yet to receive A response.

B. Action Requested: Assign appellant directly to the bridging program because the legal status summary and abstract of judgment reflect A determinate sentense and the requirement of mixed codes, consisting of consecutive enhancements stemming from non-violent non-serious convictions. In the alternative allow- -Appellant to execute A, 2934 waiver, in order to become eligible for Brigge.

Inmate/Parolee Signature: _M. Campbell_    Date Submitted: 6/6/05

C. INFORMAL LEVEL (Date Received: _____ )    PLEASE COMPLETE AT INFORMAL LEVEL
-INMATE APPEALS OFFICE-
Staff Response: You were Assigned To Position SER-4.015
ON 5.27.05

Staff Signature: SKung    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Signature: _____    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

Copy Retained.

# EXHIBIT "G"

**MATE/PAROLEE**
**APPEAL FORM**
CBC 602 (12/87)

Institution: Institution/Parole Region ___  Log No. ___   Category ___ (Oj3-18)

1. ___ CTF-S ___      1. ___
2. ___               2. 07-02493

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| CAMPBELL MAURICE | E-10493 | Work Group A-1 Unassigned | R4-234 up |

A. Describe Problem: Appellant was transferred to CTF on 9/20/06 for non-adverse reasons and remained in A-1 work group status upon arrival to CTF per CCR 15-3043.6(a)(2). & DOM-53130.12. A-1 status was established at Centinela where I was initially assigned to Voc/No. SER-4.015-489 and then reassigned to support services No. BAR-D-202. It was at CEN that I submitted 602 #CEN-04-0840 requesting assignment in Bridging or any other assignment but 602 was denied. I then resubmitted 602 #CEN-D-05-1025, requesting to sign a P.C. 2934 waiver in order to participate in Bridge and to be granted halftime credits pursuant-
If you need more space, attach one additional sheet.  -to penal code section-2933 but 602 was denied.

B. Action Requested: Although I'm unassigned I still retain A-1 status and therefore, I am now submitting the "attached" P.C. 2934 Time-Credit-Waiver to be processe in accordance with CCR 15-3043.1 & DOM-53130.5, and to be auto-revested half-time credits pursuant to P.C. 2933, commencing upon my arrival to CDCR on-April 29, 2003, or initial assignment.
Inmate/Parolee Signature: _MC Gill_   Date Submitted: 6/20/07

C. INFORMAL LEVEL (Date Received: 06/27/07 )
Staff Response: DENIED, AT THIS LEVEL AS A CCI I DON'T CALCULATE TIME, ALTHOUGH IT IS MY UNDERSTANDING CREDIT CODE 4 INMATES ARE NOT ENTITLED TO BRIDGING PROGRAM OR DAY FOR DAY CREDIT AND THEREFORE YOUR APPEAL IS DENIED
Staff Signature: _____ CCI      Date Returned to Inmate: 6/27/07

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Implement the correct Legal Status Summary "Credit-Code" and process the P.C. 2934 Time-Credit-Waiver. In the alternative, forward the appeal to Case Records for Time-Computation in accordance with DOM-53130.6.2 and DOM-73030, to reflect a credit calculation in accordance with P.C. 2933.

Signature: _MC Gill_      Date Submitted: 7/3/07
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-___ Inmate Claim      CDC Appeal Number:

RECEIVED JUL 1997 CTF APPEALS   RECEIVED JUL 24 2007 CTF APPEALS   RECEIVED 1 2007 CTF APPEALS

07-02493

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDC TIME CREDITS WAIVER
CAL. P.C.SEC.2934

I, the undersigned, having been committed to the Department of Correcti-
on and Rehabilitation (CDCR) understand that pursuant to the California-
Penal Code (PC), unless I sign this waiver givung up my right to earn cr-
edits towards my release under either P.C. Secs.2931,2933.1,or 2933.2 I
will not be able to earn credits under the Inmate Work Training Incenti-
ve Program (IWTIP) as set forth under the Inmate Work Training Program
(IWTIP) as set forth in PC Sec.2933, also known as "day for day".

I, hereby waive my right to the provisions of the aforementioned PC.Sec-
tions by executing this voluntary and irrevocable waiver. I request that
future time credits under the (IWTIP) be granted under PC.Sec.2933. Such
credit must be earned and will be awarded only after it is earned. This
waiver will be effective on the date I sign this waiver, and because I
have been forced to work under the IWTIP since my arrival at CDC, or
suffer negative consequences under the IWTIP, my credits earned prior to
this waiver for all time I worked under the IWTIP will be auto revested
to credit me for such time pursuant to PC Sec. 2933. I am aware that
this waiver is irrevocable.

I am aware and understand that Time Credit will be granted, based upon
my actual performance in the (IWTIP) work group to which I am assigned,
e.g., Work Groups A, B, C, or D, as follows:

Full-Day Assignment: For each six months of full-time assignment, six
months credit, or one-day credit for each day assigned for lesser periods
(i.e., day for day) (CCR, Title 15, 3044).

Half-Day Assignment: For each six months of one-half day assignment or
enrollment in a two or four-year college program leading to a degree,
three months credit, or one day for each two days assigned for a lesser
period. (CCR, Title 15, Sec. 3044.)

Involuntary Unassigned: For each six months on a waiting list, three
months credit, or one-day credit for each two days on a waiting list for
a lesser period. (CCR, Title 15, Sec. 3044.)

Voluntarily Unassigned: Zero credit will be earned if I refuse to accept
or preform a full-time assignment. (CCR, Title 15, 3044.)

Segregation Following A Disciplinary Infraction: When I am in lock-up
status due to a disciplinary infraction, zero credit will be earned for a
period equal to the number of days of any disciplinary credit loss. This
may be extended in six months increments thereafter. (CCR, Title 15, Sec.
3.44.)

(1)

CAL. P.C. Sec. 2934"WAIVER"

I am aware that my credit earning status may be changed by a Classific-
ation Committee action at any time, following all procedural due process
safeguards. I am aware that I may be placed into zero credit earning
status due to a work/training disciplinary and/or unsatisfactory work
performance. (CCR, Title 15, Sec.3044)

I am aware and agree that the penalties for a disciplinary offence
committed by me will be increased under the (IWTIP) as follows:

Up to 360 days of credit may be denied or lost for a single act
of misconduct, as provided in section (CCR Title,15 Sec.3323(c)), wether
or not prosecution is undertaken.

Up to 180 days of credit may be denied or lost for a single act of
misconduct as provided in section (CCR,Title,15 Sec.3323(d-h),wether or
not prosecution is undertaken.

Up to 30 days of credit may be denied or lost for a single act of
misconduct defined by regulations as a serious Displinary Offence by the
Department of Corrections and Rehabilitation, (CCR,Title,15 Sec.3323(i)

INMATE NAME MAURICE CAMPBELL

INMATE SIGNATURE _McCbell_

CDC NUMBER E-10493    DATE June 20 , 2007

WITNESS SIGNATURE

TITLE OF WITNESS

DATE WITNESS SIGNED

WITNESS NAME
                    (Type or Print)

This waiver is accapted by the California Department of Corrections
and Rehabilitation,and is effective immediately, all credits earned under
the Inmate Work Incentive Program prior to the date of this waiver will
be automatically credited at a rate as set forth under California Penal
Code Section,(2933,day for day) as it is presently being auto-revested to
inmates as of the date of this waiver.

CAL.P.C.SEC.2934"WAIVER"

# DEPARTMENT OF CORRECTIONS AND REHABILITATION
## Correctional Training Facility
### Soledad, California

**SUPPLEMENTAL PAGE**
Second Level Reviewer's Response

RE:  CTF APPEAL LOG NO:  **CTF-S-07-02493**

NAME:  Campbell                    **CDC #**    E10493                    **HOUSING:**  NORA316L

APPEAL ISSUE: Work Incentive

APPEAL DECISION:  Denied

APPEAL RESPONSE:

On July 12,2007 you were interviewed by R. Garcia Case Records Analyst; at that time the following was explained:  You were ineligible to ear credit per pc2933.  The Los Angeles County Court sentenced you pursuant to pc667(b)-(i) pc1170.12 two strikes.  You were supplied with copied certified documents to support this decision.

The method of computing time and applying credit to and inmate's term is governed by the laws applicable on the date the inmate's crime is committed.

An extensive review of your package and central file was conducted.
On March 13,2003 in Los Angeles County case GA049519-01, your oral proceedings documents the following you were sentenced to the mid term on count 1 which is 4 years doubled pursuant to strike allegation which was admitted for a total of 8 years. Based on the information above your appeal is being denied.

Reviewed By _____        8-13-2007
L.Sinclair/ C.T.F Correctional Case Records Supervisor  (A)        Date

Reviewed By _____        8/16/07
C.Noll/C>T>F> CHIEF Deputy Warden        Date

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 03/13/03

------------------------------------------------------------------------

CASE NO. GA049519

THE PEOPLE OF THE STATE OF CALIFORNIA
                         VS.
DEFENDANT 01:  MAURICE EDWARD CAMPBELL

------------------------------------------------------------------------

INFORMATION FILED ON 05/28/02.

COUNT 01: 459 PC FEL  - BURGLARY.

ON 03/13/03 AT  830 AM  IN NORTHEAST DEPT NEE

CASE CALLED FOR PROBATION AND SENTENCE HEARING

THIS IS A THIRD STRIKE CASE.

PARTIES: TERI SCHWARTZ (JUDGE) DAVID DIAZ   (CLERK)
         ROBERT LEWITT  (REP)    STEVEN M BARSHOP  (DDA)

DEFENDANT IS PRESENT IN COURT, AND REPRESENTED BY DENNIS YAMAMOTO DEPUTY PUBLIC
 DEFENDER

DEFENDANT WAIVES ARRAIGNMENT FOR JUDGMENT AND STATES THERE IS NO LEGAL CAUSE
WHY SENTENCE SHOULD NOT BE PRONOUNCED. THE COURT ORDERED THE FOLLOWING
JUDGMENT:

IMPRISONED IN STATE PRISON FOR A TOTAL OF 15 YEARS

AS TO THE BASE COUNT  (01):

COURT ORDERS PROBATION DENIED.

SERVE 8 YEARS IN ANY STATE PRISON

COURT SELECTS THE MID TERM OF 4 YEARS AS TO THE BASE TERM COUNT 01.

PLUS 4 YEARS PURSUANT TO SECTION 1170.12(A)-(D)

 DEFENDANT GIVEN TOTAL CREDIT FOR 482 DAYS IN CUSTODY 322 DAYS ACTUAL CUSTODY
AND 160 DAYS GOOD TIME/WORK TIME

IN ADDITION:

-THE DEFENDANT IS TO PAY A RESTITUTION FINE PURSUANT TO SECTION
1202.4(B) PENAL CODE IN THE AMOUNT OF $ 200.00

-DEFENDANT IS TO PAY A PAROLE RESTITUTION FINE, PURSUANT TO PENAL
                                      PROBATION AND SENTENCE HEARING
              PAGE NO.   1        HEARING DATE: 03/13/03

CASE NO. GA049519
DEF NO.  01                                      DATE PRINTED 03/13/03

CODE SECTION 1202.45, IN THE AMOUNT OF $ 200.00 SAID FINE IS
 STAYED AND THE STAY IS TO BECOME PERMANENT UPON SUCCESSFUL
 COMPLETION OF PAROLE.

-DEFENDANT IS TO MAKE RESTITUTION TO THE VICTIM PURSUANT TO
PENAL CODE SECTION 1202.4(F), IN THE AMOUNT OF$ 3500.00

-THE COURT ADVISES THE DEFENDANT OF PAROLE RIGHTS.

DEFENDANT ADMITS 2 PRIOR ALLEGATIONS PURSUANT TO PENAL CODE
SECTION 667.5(B).
THE COURT IMPOSES AN ADDITIONAL 5 YEARS PURSUANT TO PENAL CODE
SECTION 667(A)(1) AND AN ADDITIONAL 2 YEARS (1 YEAR EACH)

PURSUANT TO PENAL CODE SECTION 667.5(B) FOR A TOTAL STATE PRISON
SENTENCE OF 15 YEARS.

THE COURT IMPOSES AN ADDITIONAL $10.00 FINE PURSUANT TO PENAL
CODE SECTION 1202.5

COUNT (01): DISPOSITION: CONVICTED

DMV ABSTRACT NOT REQUIRED

NEXT SCHEDULED EVENT:
PROCEEDINGS TERMINATED

                                        PROBATION AND SENTENCE HEARING
            PAGE NO.    2               HEARING DATE: 03/13/03

ABSTRACT OF JUDGMENT – PRISON COMMITMENT – DETERMINATE
SINGLE, CONCURRENT, OR FULL-TERM CONSECUTIVE COUNT FORM
*[Not to be used for multiple count convictions or for 1/3 consecutive sentences]*

APR 18 2003

SUPERIOR COURT OF CALIFORNIA, COUNTY OF: **LOS ANGELES**

| PEOPLE OF THE STATE OF CALIFORNIA vs. | | |
|---|---|---|
| DEFENDANT: **CAMPBELL, MAURICE EDWARD** | DOB: **07-25-60** | CASE NUMBER **GA049519-01** |
| AKA: | | |
| CII#: **A05522335** | | |
| BOOKING #: **7262562** | ☐ NOT PRESENT | |
| COMMITMENT TO STATE PRISON ABSTRACT OF JUDGMENT | ☐ AMENDED ABSTRACT | |

| DATE OF HEARING **03-13-03** | DEPT. NO. **NE E** | JUDGE **TERI SCHWARTZ** |
|---|---|---|
| CLERK **JENNIFER BEEAL** | REPORTER **ROBERT LEWITT** | PROBATION NO. OR PROBATION OFFICER **X-911954** |
| COUNSEL FOR PEOPLE **STEVEN M BARSHOP** | | COUNSEL FOR DEFENDANT **DENNIS YAMAMOTO, DPD** ☐ APPTD. |

1. Defendant was convicted of the commission of the following felony:

| CNT. | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO./DATE/YEAR) | JURY | COURT | PLEA | TERM (L, M, U) | YRS. | MOS. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | PC | 459* | 1ST DEG RESIDENTIAL BURGLARY | 2002 | 01-24-03 | | | X | M | 8 | 0 |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| CNT. | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

3. ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | ENHANCEMENT | Y/S | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 667.5(B) | 1 | 667.5(B) | 1 | 667(A)(1) | 5 | | | 7 | 0 |

4. ☒ Defendant was sentenced pursuant to PC 667 (b)-(i) or PC 1170.12 (two-strikes).

5. FINANCIAL OBLIGATIONS (including any applicable penalty assessments):

   Restitution Fine(s): **$200.00** forthwith per PC 2085.5; **$200.00** per PC 1202.45 suspended unless parole is revoked.

   Restitution per PC 1202.4(f): ☒ **$3500.00** / ☐ Amount to be determined   to ☒ victim(s)*   ☐ Restitution Fund
   (*List victim name(s) if known and amount breakdown in item 7 below.)

   Fine(s): **$10.00** per PC 1202.5. $_____ per VC 23550 or _____ days   ☐ county jail   ☐ prison in lieu of fine   ☐ CC   ☐ CS

   Lab Fee: $_____ per HS 11372.5(a) for counts _____.   ☐ Drug Program Fee of $150 per HS 11372.7(a).

6. TESTING:   a. ☐ AIDS pursuant to PC 1202.1   b. ☐ DNA pursuant to PC 296   c. ☐ other *(specify)*:

7. Other orders *(specify)*:

8. | TOTAL TIME IMPOSED EXCLUDING COUNTY JAIL TERM: | 15 | 0 |

9. ☐ This sentence is to run concurrent with *(specify)*:

10. Execution of sentence imposed
    a. ☒ at initial sentencing hearing.
    b. ☐ at resentencing per decision on appeal.
    c. ☐ after revocation of probation.
    d. ☐ at resentencing per recall of commitment. (PC 1170(d).)
    e. ☐ other *(specify)*:

11. | DATE SENTENCE PRONOUNCED **03-13-03** | CREDIT FOR TIME SPENT IN CUSTODY **482** | TOTAL DAYS: INCLUDING: | ACTUAL LOCAL TIME **322** | LOCAL CONDUCT CREDITS **160** | ☐ 4019 ☒ 2933.1 | TIME SERVED IN STATE INSTITUTION: | DMH | CDC | CRC |

12. The defendant is remanded to the custody of the sheriff ☒ forthwith   ☐ after 48 hours excluding Saturdays, Sundays, and holidays.
    To be delivered to   ☒ the reception center designated by the director of the California Department of Corrections.
    ☐ other *(specify)*:

CLERK OF THE COURT: I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

| DEPUTY'S SIGNATURE | DATE **03-21-03** |
|---|---|

This form is prescribed under PC 1213.5 to satisfy the requirements of PC 1213 for determinate sentences. Attachments may be used but must be referred to in this document.

Form Adopted for Mandatory Use
Judicial Council of California
CR–290.1 (Rev. January 1, 2003)

**ABSTRACT OF JUDGMENT – PRISON COMMITMENT – DETERMINATE
SINGLE, CONCURRENT, OR FULL-TERM CONSECUTIVE COUNT FORM**

Penal Code,
§§ 1170,1213, 1213.5

LEGAL STATUS SUMMARY   T   -   D   CEN                    04/27/2006 21:

| CDC NUMBER | NAME | ETHNIC | BIRTHDATE |
|---|---|---|---|
| E10493 | CAMPBELL.MAURICE.EDWARD | WHI | 07/25/1960 |

ACA CAMPBELL,MAURICE
ACA CAMPBELL,MAURICE,JR

| TERM STARTS | MAX REL DATE | MIN REL DATE | MAX ADJ REL DT | MIN ADJ REL DT |
|---|---|---|---|---|
| 04/29/2003 | 10/25/2016 | 02/13/2014 | 10/25/2016 | 02/13/2014 |

|  |  |  |  |  | PAROLE PERIOD |
|---|---|---|---|---|---|
|  |  |  |  |  | 3 YRS |

BASE TERM  8/00 + ENHCMNTS   7/00 = TOT TERM  15/00

PRE-PRISON + POST SENTENCE CREDITS
CASE     P2900-5 P1203-3 P2900-1 CRC-CRED MH-CRED P4019   P2931 POST-SENT   TOT

| GA049519 | 322 |  |  |  | 160 |  | 46 | 528 |
|---|---|---|---|---|---|---|---|---|

PC296 DNA COMPLETED

| RECV DT/ COUNTY/ | CASE | SENTENCE DATE | CREDIT | OFFENSE |
|---|---|---|---|---|
| CNT | OFF-CODE | DESCRIPTION | CODE | DATE |

CONTROLLING PRINCIPAL & CONSECUTIVE   (INCLUDES ENHANCEMENTS/OFFENSES):

--CONTROLLING CASE --
4/29/2003  LA   GA049519     3/13/2003   NO STRIKES: 2
                02 P667.5(B) PPT-NV                              3
                01 P667(A)    01 PFC SERIOUS                     3
01 P459       BURGLARY 1ST                                      3    04/25/2002

| TRAN |  |  |  | RULE | _____D A Y S_____ |  |  |  |
|---|---|---|---|---|---|---|---|---|
| TYPE | DATE | END DATE | LOG NUMBER | NUMBER | ASSESS | LOST | REST | DEAD |

| BEG | 02/27/1989 |  | ******BEG BAL******* |  |
|---|---|---|---|---|
| ADD | 09/26/1989 |  | BA002417 |  |
| ADD | 09/26/1989 |  | BA002417 |  |
| ADD | 01/05/1990 |  | GA001667 |  |
| ADD | 12/06/1995 |  | GA025180 |  |
| ADD | 12/06/1995 |  | GA025180 |  |
| ADD | 08/10/1998 |  | BA164490 |  |
| ADD | 04/29/2003 |  | GA049519 |  |

CURRENT PC BALANCE:   0          CURRENT BC BALANCE:   985

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

June 22, 2007

**CAMPBELL, E10493**
NORAT2000000234U

Log Number: CTF-S-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*A limit of one continuation page, front and back, may be attached to the appeal to describe the problem and action requested in sections A and B of the CDC Form 602. CCR 3084.2(a)(1). Remove unnecessary documents and resubmit.*

*Need to state what you are appealing. What is your grivance?*

J. Aboytes / P. G. Dennis
Appeals Coordinators
Correctional Training Facility

Received - 6/25/07

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed. If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents. You have only 15 days to comply with the above directives.

---

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:    NOV 1 8 2007

In re:    Maurice Campbell, E10493
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960

IAB Case No.: 0707565    Local Log No.: CTF-07-02493

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner P. Enriquez, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that he requested admission into the Bridging Program while he was housed in the Centinela State Prison. He states his request was denied and he submitted an appeal, but it was also denied. He then submitted another appeal requesting a California Penal Code Section (PC) 2934 waiver in order to participate in the Bridging Program and be granted halftime credits pursuant to PC 2933, but the appeal was denied. He was transferred to the Correctional Training Facility (CTF) on June 20, 2006, with Work Group/Privilege Group (WG/PG) "A-1/A" status based on his assignment to the a credit earning position. He claims that although he is unassigned he retains his credit earning position status at WG/PG "A-1/A" so he is again submitting a PC 2934 time credit waiver to be processed in accordance with California Code of Regulations, Title 15, Section 3043.5 and to be auto-reversed halftime credit pursuant to PC 2933 commencing upon his arrival to the CDCR on April 29, 2003.

At the Director's Level of Review he introduces new issues that were not a part of the original appeal by claiming he is being denied PG activities.

**II    SECOND LEVEL'S DECISION:** The reviewer found the First Level of Review found the appellant was sentenced as a second striker which meant he was not entitled to earn halftime credit. He was provided copies of his Abstract of Judgment and Legal Status Summary Sheet.

The Second Level of Review (SLR) noted the method of computing time and applying credits to an inmate's term was governed by laws applicable on the date of the inmate's crime was committed. An extensive review of the appellant's package and central file was conducted. On March 13, 2003, the Los Angeles County Superior Court sentenced the appellant under PC 667(b)-(i) and PC 1170.12 as a second strike offender. He was found to be ineligible to earn credit per PC 2933. The appeal was denied by the SLR.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

A.    **FINDINGS:** The appellant was found to be ineligible for halftime credit earnings effect from April 29, 2003, in that he was sentenced to serve his term as a second striker at 85 percent. The appellant has been directed to the PC sections that controlled his time computation and credit status.

B.    **BASIS FOR THE DECISION:**
PC: 667, 1170.12, 2933, 2934

C.    **ORDER:** No changes or modifications are required by the Institution.

MAURICE CAMPBELL, E1___
CASE NO. 0707565
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, CTF
        Appeals Coordinator, CTF

# EXHIBIT   "H"

ENDORSED

APR 11 2006

SUPERIOR COURT
IMPERIAL COUNTY
JOSE O. GUILLEN, CLERK
BY LYDIA M. ANTUNEZ
DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF IMPERIAL

In re:                                          Case No.: EHC 00724

     MAURICE CAMPBELL,                   ORDER DENYING PETITION FOR WRIT OF
                                                HABEAS CORPUS
       On Habeas Corpus.

     Petitioner, a state prisoner incarcerated at the Centinela State Prison, filed a petition for

writ of habeas corpus on March 1, 2006. Petitioner alleges that he has been improperly denied a

work assignment, which assignment would allow him to earn day-for-day behavioral credits on

his sentence.

     The petition is denied for the following reasons: The factual allegations of the petition

are, to a large extent, commingled with argument. An analysis of the petition fails to reveal any

allegation of fact indicating respondent abuses its discretion, or failed to perform a clear, present,

and ministerial duty. The petition fails to state a prima facie claim for habeas relief.

Dated: April 10, 2006

                                     Hon. Jeffrey B. Jones, Judge
                                     of the Superior Court

# EXHIBIT   "I"



IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT



Court of Appeal - Sixth App. Dist.

APR 2 5 2007

MICHAEL J. YERLY, Clerk

By _____
                DEPUTY

In re MAURICE EDWARD CAMPBELL,

on Habeas Corpus.

H031353
(Imperial County
Super. Ct. No. EHC00724)

BY THE COURT:

The petition for writ of habeas corpus is denied.

(Premo, Acting P.J., Elia, J., and Duffy, J., participated in this decision.)

Dated    APR 2 5 2007                    **PREMO, J.**                    Acting P.J.

# EXHIBIT "J"

PC 2933

Received
10-15-07

S152665

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

---

In re MAURICE EDWARD CAMPBELL on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

OCT 1 0 2007

Frederick K. Ohlrich, Clerk

Deputy

**GEORGE**

Chief Justice

# EXHIBIT   "K"



| | Number: |
|---|---|
| Department of Corrections and Rehabilitation | 05/07 |
| | Date Issued: |
| NOTICE OF CHANGE TO REGULATIONS | September 2, 2005 |
| | Effective Date: |
| Sections: 3000, 3040, 3040.2, 3041, 3043, 3043.3, 3043.4, 3043.5, 3043.6, 3044, 3045, 3045.1, 3045.2, 3045.3, and 3075 | To Be Announced |

This notice announces amendments to Sections 3000, 3040, 3041, 3043, 3043.3, 3043.4, 3043.5, 3043.6, 3044, 3045, 3045.1, 3045.2, 3045.3, 3075 and the adoption of 3040.2 of the California Code of Regulations (CCR), Title 15, Crime Prevention and Corrections, to incorporate into the CCR, provisions governing the bridging education program, credit earning, inmate work/training incentive groups, excused time off, and timekeeping and reporting.

**IMPLEMENTATION: To Be Announced.**

**PUBLIC COMMENT PERIOD**
Any person may submit written comments about the proposed regulations to the California Department of Corrections and Rehabilitation, Regulation and Policy Management Branch (RPMB), PO Box 942883, Sacramento, CA 94283-0001, by fax to (916) 358-2636 or by e-mail to *RPMB@cdcr.ca.gov*. All written comments must be received by the close of the public comment period, **November 7, 2005** at 5:00 PM.

**PUBLIC HEARING INFORMATION**
A public hearing regarding these proposed regulations will be held **November 7, 2005** from **9am – 12pm** in the **Resources Agency Auditorium, 1416 Ninth Street, Sacramento, CA 95814.** This location is wheelchair accessible. The purpose of the hearing is to receive oral comments about this action. It is not a forum to debate the proposed regulations. No decision regarding the permanent adoption of these regulations will be rendered at this hearing. Written or facsimile comments submitted during the prescribed comment period have the same significance and influence as oral comments presented at the hearing.

**POSTING**
This notice shall be posted immediately upon receipt at locations accessible to inmates, parolees, and employees in each Department facility and field office. Also, facilities shall make this notice available for review by inmates in segregated housing who do not have access to the posted copies and shall distribute it to inmate law libraries and advisory councils.

**CONTACT PERSON**
Inquiries regarding this notice should be directed to Timothy M. Lockwood, Chief, RPMB, or to Randy Marshall, RPMB, California Department of Corrections and Rehabilitation, PO Box 942883, Sacramento, CA 94283-0001, by telephone (916) 358-1655 or e-mail *RPMB@cdcr.ca.gov*. Inquiries regarding the subject matter of these regulations may be directed to Fred Lembach, Lieutenant, Department of Corrections and Rehabilitation at (916) 323-0138.

JOE McGRATH
Chief Deputy Secretary
Adult Operations

Attachments

CDC 1189 (6/94)

# EXHIBIT "L"

# STATE PRISONS ARE CROWDED WITH INMATES LACKING A BASIC EDUCATION — THEIR DISMAL JOB PROSPECTS MEAN THEY'RE LIKELY TO LAND BACK BEHIND BAR

**By James Sterngold**
CHRONICLE STAFF WRITER

But Davenport, serving time for a burglary conviction, is one of the lucky ones. He has finally made progress in his long struggle with illiteracy, a breakthrough he described while holding one of the more sought-after prizes in California's overburdened corrections system — a classroom seat. He had to wait a year to get into a class in a cramped trailer at the prison in Norco, the California Rehabilitation Center, but now he gets six hours a day of instruction and help with a learning disorder.

"When I came in, I couldn't read at all," said Davenport, who is from a rough neighborhood in Los Angeles. "Now I don't have to ask the other guys to read my letters for me. When I want to write a letter, I get my dictionary and I can do it myself."

Convicts typically enter the corrections system burdened with loads of heavy emotional baggage — drug addiction, alcoholism, scars from childhood abuse, mental illness and family meltdowns. But the most common companions for those who have failed to find a place in the legitimate world are illiteracy and stunted educational backgrounds.

Roughly two-thirds of California's 173,000 inmates read below a ninth-grade level, according to corrections department figures, and more than half read below a seventh-grade level, making them functionally illiterate, unable to read and follow complex written directions. A total of 21 percent read below a third-grade level.

Research has shown that arming inmates with a solid education is one of the surest ways of reducing the rate at which they end up back behind bars after being released. Officially, California has embraced education as an important form of rehabilitation, but the reality is far different. Just 6 percent of inmates are in academic classes, and 5 percent are in vocational classes.

Some experts regard that as one of the saddest among a long list of failures in the deeply troubled prison system. Not only does an education make it much easier for a parolee to find and hold a decent job, but, unlike drug users, there are no relapses for those who escape illiteracy.

"There is not a lot of causal evidence that specifically says people with educational skills won't commit crimes, but there is definitely a strong correlation between educational ability and staying out of prison," said Peter Leone, a correctional education expert at the University of Maryland.

A comprehensive study by the Washington State Institute for Public Policy, the research arm of the Washington Legislature, found that general education programs reduced the recidivism rate by 7 percent and vocational programs by 9 percent, among the best records of in-prison programs.

The academic and vocational programs cost the state about $1,000 a year per inmate but, the study concluded, vocational education produced a net benefit to the state of $13,738 per participant, and the educational programs $10,669 per inmate, in the form of lower crime rates, fewer victims and less criminal justice spending.

California's shortcomings are particularly glaring given that there is a state law mandating that the corrections department bring inmates to at least a ninth-grade reading level by the time they are paroled.

But the law, which says the department should achieve a 60 percent success rate at a minimum, is virtually ignored. Many of the prison educators say there is almost a complete disconnect between such legislative goals and what actually happens inside the prison walls.

"If we were working in a perfect world, that would be something we would try and achieve," said Rob Churchill, acting superintendent of education at the California Department of Corrections and Rehabilitation.

What has made the problem even more urgent is the over-crowding crisis. California's 33 prisons are operating at roughly double capacity. Dayrooms are often jammed with double bunks. Programs for the inmates, from medical care to drug treatment, are breaking down.

One result is that California has the worst recidivism rate in the country, close to 70 percent. That is a key reason that the prisons budget, now more than $8 billion a year, is rising faster than most other state spending.

Gov. Arnold Schwarzenegger declared a state of emergency in the prisons this fall because of the spiraling problems, and the Legislature singled out education as one potential solution. For the current fiscal year, it appropriated $52.8 million for special recidivism reduction efforts, with the largest amount, $21.1 million, for education.

But then there is the reality. Enrollment in traditional academic and vocational classes is actually dropping, from 32,100 in fiscal 2001 to 21,800 in the past fiscal year.

And those figures may be overstating inmate participation. According to the Legislative Analyst's Office, inmates miss classes 24 percent of the time because of frequent lockdowns, which are often a result of dangerous overcrowding, and they miss 19 percent of classes due to teacher absences.

With classroom space sparse, waiting lists long and teacher vacancies high — about 20 percent — the corrections department has dabbled with a new approach. It has been trying to get some inmates into an alternative education program, called "bridging," as a stopgap.

Bridging focuses largely on life skills, not traditional subjects like math and reading. It involves handing inmates a packet each week and then expecting them to study on their own. While some say

Continue on Page-(2)

# ILLITERACY REINFORCES PRISONERS' CAPTIVITY

the program benefits a few highly motivated inmates, many experts say that it is difficult if not impossible to accomplish much because overcrowding makes dorms and cells noisy and cramped.

"Bridging is the most ridiculous thing I've ever seen," said state Senate Majority Leader Gloria Romero, D-Los Angeles, who is leading efforts to tackle the prison crisis. "I'm an educator and that program doesn't teach anything."

Mike Weaver, the principal of education programs at the California Rehabilitation Center, defended bridging, but only in some cases.

"Forty percent of my guys can't really read, so what good does it do to give them a packet and tell them to go study it?" Weaver asked.

But there are indications that bridging may serve a less obvious purpose.

One of the enticements to get inmates into programs is to offer credit, or reductions in sentences, for every day they are enrolled in a class. They can shave months off of sentences just by getting enrolled, even in the bridging program. Thus, the higher the enrollment numbers, the faster the department can push the inmates out.

The corrections department has long been adamant that it will not release inmates early just to ease overcrowding.

But the educational programs, especially the bridging program, appear to provide a way around this policy. That is particularly true in the reception centers, where inmates stay for a few months when they first enter prison.

There are no formal classes at the reception centers, and prison officials have pushed bridging programs in the centers to overcome that problem.

"The main purpose of bridging was to get them in a credit-earning status quickly," said Janet Blaylock, the assistant superintendent of prison education.

The overall system is so ill-equipped to actually achieve real goals that not only is the state corrections department missing its educational objectives, it does not even know by how much because it does not track the educational level of departing inmates.

"California has not done any type of research on educational outcomes," said Blaylock. "We don't have the infrastructure because we're not hooked up electronically. Any records we have are kept manually."

The prison at Norco is actually one of the better institutions in the state. With 4,001 inmates, the prison is operating at 221 percent of its design capacity, but it has been producing more than 100 graduates from its GED program a year — there will be more than 200 in 2006 — and has few teacher vacancies.

There is room for only 9 percent of the inmates in academic classes, but many of those who make it express satisfaction.

Leo Brown, 42, described how one of his daughters had graduated from high school last year, with another lined up to earn her diploma next year. His voice turned into a whisper when he added that he had entered prison reading at a fourth-grade level. Having gotten into a basic education class, he now reads at an eighth-grade level and has a shot at earning a GED.

"It don't look good if my kids have degrees I don't," Brown said. "It's hard to face sometimes where I'm at."

At Norco, 321 inmates are enrolled in academic classes and 247 are on waiting lists. Another 126 inmates are waiting to get into English as a Second Language classes. The situation is far worse on the vocational side, with 225 inmates enrolled and 348 on waiting lists.

"We could double or triple the vocational classes alone and they'd fill up immediately, but we don't have the space or the equipment," Weaver said.

The situation is much worse at many other prisons. At the California Correctional Institution in Tehachapi (Kern County), for instance, there are 14 academic teacher vacancies, 36 percent of the authorized slots, and four vocational teacher vacancies. Some class conditions are almost unbearable.

"Our dayrooms have been invaded with bunks so we've been forced into holding some of the classes in the dining halls, and it's very, very tough," said Robert Lee, the principal. "The acoustics are terrible. Everyone is on those little hard seats at little metal tables. It makes it all very difficult."

He said that filling the teacher vacancies has been extremely difficult, in large part because salaries are too low.

"People like to say it's not a money issue, but it is a money issue," Lee said.

One of the tools the teachers at Norco use is inmate tutors and mentors. The inmates say that shame and embarrassment are among the biggest barriers to getting undereducated inmates to overcome illiteracy, and inmates who have been through that battle are sometimes best at being able to sympathize with the problem.

"I'm just another guy in blue," said Paul Krieger, 32, who is serving his fourth term in prison, this one for residential robbery, and is now working on a college degree. "I can talk to them. I know how it feels to be incarcerated. I feel inadequate as a father being in here. For most of these guys, they think an education is just another unattainable goal, and I can show them it's possible."

Gabriel Velasquez, a 20-year-old serving a sentence for robbery and assault, entered prison with a seventh-grade reading level. Next month, he will take the test for his GED and says he is confident he will pass, and that piece of paper will be a key to changing his life.

"People hide illiteracy," said Velasquez. "No one in here wants to look vulnerable."

E-mail James Sterngold at jsterngold@sfchronicle.com.

# EXHIBIT "M"

# California's Parole-Violator Cell-Study Education Program Portends Increase In "Recidivism"

## by Marvin Mentor

A well-intentioned but struggling new rehabilitative in-cell, tutored, self study program for California parole violators ("Bridging Program"), participation in which cuts five days per month off eligible violators' return-to-custody time, is having the anomalous effect of increasing the state's "recidivism" statistics. The paradox is that as fast as the California Department of Corrections (CDC) empties parole violators' prison beds with the benefit of their new life-skills schooling, posted prison-guards-union parole agents sweep the streets to refill those beds with technical parole violation "recidivists."

As a result, rather than saving $51.5 million in the first year and $71 million in the second, the Bridging Program is costing $14.5 million more so far. If "recidivism" in CDC were instead restricted to only new offenses, thereby eliminating the practice of bed-vacancy driven "parole violations," California would not suffer its stigmatic 40% "recidivist" violator population that exceeds that of 39 other states combined. The deception goes deeper than just a gloss on the term "recidivism."

"The [Bridging Program] is a front, a fake, a way CDC can say, We are offering education," declared State Senator Gloria Romero, who intends to hold hearings on prison education soon. "Something

is probably better than nothing. But is this the kind we should offer? No." Even prison teachers' union spokesman Andy Hsia-Coron was dubious. "You know how Jesus turned water into wine? Well, we're turning wine into water."

Presently, nearly 20,000 prisoners are enrolled in the Bridging Program, following its launch in November, 2003. Teachers consist mostly of the 300 "laid off" vocational instructors "cut" to trim $35 million from the 2003 budget, who were in reality simply redeployed to deliver lessons to cells and dormitories. Resembling correspondence courses, the material covers self-study topics such as anger management, violence control, HIV/AIDS, parenting, and substance abuse. A smattering of reading, writing and mathematics is added.

Some exercises ask prisoners to inventory their day, keep a journal, write an autobiography or work on their vocabulary. Another exercise asks them to list "101 Little Important Reasons Not to Come Back to Prison." Yet other exercises inspire self-reflection on how others would remember a prisoner after they die, or what their favorite memories are. Whatever the prisoners think of the Program, to which they are expected to devote 6 1/2 hours per day, most are co-operative, said Deuel Vocational Institution Bridging Instructor Jeff Ringelski.

CDC Director Jeanne Woodford called the Program "a beginning. Ideally, we would like to have a TV in every cell ... to provide education. But we don't have those dollars now." Notwithstanding budget concerns, 35% of the teaching positions remain unfilled due to recruiting problems. This saddles existing instructors with over 100 students, limiting them to no more than 1/2 hour per week on the volatile cell blocks with each enrolled prisoner. That is not enough instruction, opined Steve Steurer, executive director of the non-profit Correctional Education Association. John Berecochea, CDC's past research chief, said the Bridging Education model "does sound ludicrous, a half-hour a week." His predecessor, Robert Dickover, felt the program "does not sound promising." Using former vocational instructors "does not make a lot of sense," Steurer added, because prisoners often need specialized help to overcome literacy limitations and learning disabilities. And since instructional materials are in English, California's many foreign-

speaking prisoners are effectively shut out from meaningful participation.

Teachers provide feedback, but there are no grades or diploma credits. The immediate incentive to participating prisoners is that they earn 1/2 time credits (if their sentence permits), the same as if they worked in a prison job. But since there are no jobs for many prisoners especially the tens of thousands of parole violators who spend their entire return-to-custody time in work-ineligible Reception Centers the net result is that an estimated 45,000 qualifying prisoners each year will gain the benefit of 1/2 time over the otherwise automatic 1/3 time good behavior credits. Amounting to a net gain of 5 days per month, this adds up to 2 months reduction in incarceration per year. Put another way, the visible drop in the prison population should be 45,000 x 2 = 90,000 prisoner-months, or 7,500 prisoners (saving over $230 million) per year. When added to the 36,000 prisoners allegedly diverted to drug treatment programs under California's Proposition 36, there should be a manifest reduction of over 40,000 prisoners in CDC's population.

But CDC's population has instead swelled by 3,000 to 165,000, with parole violators packed into double bunks, 12-18" apart on cell block floors often for months while awaiting overdue *Morrissey* hearings. Guard overtime pay runs up to $1 million per month at each Reception Center prison. In budget negotiations in 2004, Governor Schwarzenegger got the guards to agree to delay 5% of their scheduled July 1, 2004 11% raise until January, 2005, publicly advertised to save a projected $108 million. But recent estimates from CDC are that they now project overrunning their $6.2 billion budget by $109 million. It would appear numerically that "recidivist"-driven overtime has repaid the delayed raise.

There can be no doubt that programs designed to increase self-esteem of prisoners can only aid their motivation to turn their lives around. But so long as CDC's automaton parole branch has the unchecked power to "flip" the parolees back as fast as the Bridging Program can recycle them, the chronic hopelessness that infects these pawns of prison job-protectionism whom CDC euphemistically labels "recidivists" will, like the prison population, only continue to grow. ◾

Source: *Sacramento Bee*.

## NEW!!!

## GUILTY PLEA CASE MANUAL

### This Mighty Mega-Manual Comes in 4 Volumes

Do you believe or suspect that your **GUILTY PLEA** was defective?

U.S. Supreme Court Cases
District Court Cases
Circuit Court Cases
Unpublished Circuit Court Cases

**Buy 1, 2, 3 or ALL 4 Volumes**

Send Now for Free Information and Pricing
(Please furnish 2 Fresh Stamps or 2 Fresh, Unaddressed Stamped Envelopes)

**EAST PUBLISHING COMPANY**
209 North Main Street, #202
Greenville, SC 29601-2115

# EXHIBIT "N"

STATUS SUMMARY  TYPE? D       PDP       AA DISCRE... +409/03/2004 21:37

| NUMBER | NAME YOUNG, | | ETHNIC | BIRTHDATE |
| | CHRISTOPHER,HENRY | | WHI | 03/05/1974 |

SL946

| M STARTS | MAX REL DATE | MAX ADJ REL DT | CURRENT REL DT |
| /01/2003 | 07/25/2012 | 07/25/2013 | 06/05/2013 |

PAROLE PERIOD
3 YRS

TERM 4/00 + ENHCMNTS 5/04 = TOT TERM 9/04

PRISON + POST SENTENCE CREDITS
P2900-5 P1203-3 P2900-1 CRC-CRED MH-CRED P4019  P2931 POST-SENT  TOT

| 957 | 74 | | 36 | 19 | 133 |

5 DNA COMPLETED

| / DT/ COUNTY/ | CASE | SENTENCE DATE | | CREDIT | OFFENSE |
| | OFF-CODE | DESCRIPTION | | CODE | DATE |

ROLLING PRINCIPAL & CONSECUTIVE  (INCLUDES ENHANCEMENTS/OFFENSES):

*SERIOUS*

*FELONY*  PC 1192.7 (C)(11)

NTROLLING CASE --
/2003  STA  1052957      2/17/2003
       01 P12022.5  01 ON BAIL                        1
P245(C)   AIM ON PO OR FIREMAN            CS         1   01/15/2003
V2800.2   DISREGARD FOR SAFETY                       1   01/15/2003

SECUTIVE FACTORS--
/2004  FUO  CRF10255     1/07/2004
V10851(A)  VEHICLE THEFT                  CS         1   11/22/2002

ONTROLLING OFFENSES:
/2004  TUO  CRF10255     1/07/2004
V10851(A)  VEHICLE THEFT                             1-  11/22/2002
           ATT

| WAIVER | *GIVEN* | BEGINNING | CREDIT | TOTAL | TOTAL | NET |
| TE | *HALFTIME* | BALANCE | APPLIED | LOST | RESTORED | TOTAL |
| /2003 | Pc 2934 | 50 | 50 | 0 | 0 | 50 |

S AUTO RE-VESTED PER (PC-2934):        6

| | | | RULE | D A Y S | | |
| DATE | END DATE LOG NUMBER | NUMBER | ASSESS LOST | REST DEAD |

/01/2003          ****END BAL*******

** DN REPRT **05/01/2004 21:5

EGAL STATUS SUMMARY   TYPE  D     PRFC

| CDC NUMBER | NAME | ETHNIC | BIRTHDATE |
| T35206 | WHITLOCK,JOSHUA,ALLEN | | 07/14/1981 |

**INMATE COPY**

AKA WHITLOCK,JOSHUA,A

TERM STARTS : MAX REL DATE
01/22/2004 : 04/03/2017

MAX ADJ REL DT : CURRENT REL DT
04/03/2017 : 03/21/2017

PAROLE PERIOD
3 YRS

ASE TERM  8/00 + ENHCMNTS   6/00 = TOT TERM 14/00

PRE-PRISON + POST SENTENCE CREDITS
ASE    P2900-5 P1203-3 P2900-1 CRC-CRED MA-CRED P4019  P2931 POST-SENT  TOT
                                                              37        7    29

03109682    247

C296 DNA COMPLETED

| RECO DT/ COUNTY/ CNT | CASE OFF-CODE | SENTENCE DATE DESCRIPTION | CREDIT CODE | OFFENSE DATE |

CONTROLLING PRINCIPAL & CONSECUTIVE  (INCLUDES ENHANCEMENTS/OFFENSES):

-CONTROLLING CASE --
1/22/2004  TDL   03109682      1/14/2004          ~SERIOUS FELONY~       1
                 01 P667.5(B)  PFT-80                                    1
                 01 P667(A)    01 PFC SERIOUS                            1      05/19/200
   01 P245(A)(1) ASSLT W/FORCE/GBI      ~VIOLENCE W/WEAPON
                 (S)MPR                  GIVEN HALFTIME
                                         PER 2933

NON-CONTROLLING OFFENSES:
7/27/2001  RIO   RIF067292      7/23/2001                                1      05/21/200
   01 P459       BURGLARY 1ST ~SERIOUS                                   1      05/23/200
   02 P496(A)    RSP

| TYP WAIVER  ←WAIVER DATE | BEGINNING BALANCE | CREDIT APPLIED | TOTAL LOST | TOTAL RESTORED | NET TOTAL |
| 1/22/2004 | 0 | 13 | 0 | 0 | 13 |

(SEE PC-2933)  ~CREDITS AUTO RE-VESTED
EDITS AUTO RE-VESTED PER PC-2934 :      0

| AR PE | DATE | END DATE | LOG NUMBER | RULE NUMBER | VIOL CAT DAYS |
| | | | | | 13 |
| 3 | 01/22/2004 | 02/15/2004 | | | |

ROLE        D A T E

EXH. P.

LEGAL STATUS SUMMARY --CONTINUATION--    PAGE    2

```
CDC NUMBER  :  NAME
  T25206    :  WHITLOCK,JOSHUA,ALLEN
```

TYPE    DATE    END DATE LOG NUMBER    NUMBER  ASSESS LOST REST DEAD

BEG 07/27/2001                ******BEG BAL******
    CURRENT PC BALANCE:        0            CURRENT BC BALANCE:        0

TO BALANCE =    0 AS OF 02/15/2004

EPED/MEPD IS 09/09/2010 BASED ON CREDIT APPLIED THRU 02/15/2004 AND WORK GROU

HALFTIME

EXH. A

590IL
570/5

AL STATUS SUMMARY   TYPE--   D    SCC                    12/07/2004 21:40.

| DC NUMBER | NAME | |ETHNIC| | BIRTHDATE |
| KB1737 | ~~REDACTED~~ | | WHI | | 02/13/1977 |

| ERM STARTS | MAX REL DATE | MAX ADJ REL DT | CURRENT REL DT |
| 03/06/2003 | 10/07/2012 | 10/07/2012 | 09/28/2009 |

| | PAROLE PERIOD |
| | 3 YRS |

E TERM  4/00 + ENHCMNTS   5/00 = TOT TERM  11/00

E-PRISON + POST SENTENCE CREDITS
SE     P2900-5 P1203-3 P2900-1 CRC-CRED MH-CRED P4019   P2931 POST-SENT  TOT

0164617    414                              62              26      503

196 DNA COMPLETED

# INMATE COPY

| CV DT/ COUNTY/ | CASE | SENTENCE DATE | CREDIT | OFFENSE |
| NT | OFF-CODE | DESCRIPTION | CODE | DATE |

TROLLING PRINCIPAL & CONSECUTIVE   (INCLUDES ENHANCEMENTS/OFFENSES):

ONTROLLING CASE --
06/2003  SB   SCD164617    2/07/2003
               01 P667(A)    01 PFC SERIOUS                  1
5 P245(B)     ASLT W/SEMIAUTO FIREARM                        1     12/19/2001

-CONTROLLING OFFENSES:
06/2003  SB   SCD164617    2/07/2003
1 P213.5(C)   ROBBERY 2ND                                    1     12/19/2001
               CSP
2 V2800.3     EVADING PD CAUSING DEATH/GBI                   1     12/19/2001
7 P245(B)     ASLT W/SEMIAUTO FIREARM                        1     12/19/2001
3 P12021(A)1  POSS F/A EX-FEL                                1     12/19/2001
) P245(B)     ASLT W/SEMIAUTO FIREARM                        1     12/19/2001
2 P245(B)     ASLT W/SEMIAUTO FIREARM                        1     12/19/2001
) P245(B)     ASLT W/SEMIAUTO FIREARM                        1     12/19/2001

| WAIVER | BEGINNING | CREDIT | TOTAL | TOTAL | NET |
| DATE | BALANCE | APPLIED | LOST | RESTORED | TOTAL |
| 6/2003 | 1105 | 1105 | 90 | 90 | 1105 |

TS AUTO RE-VESTED PER PC-2934 :   13

| | | | RULE | | | D A Y S | | |
| DATE | END DATE LOG NUMBER | | NUMBER | ASSESS LOST REST DEAD |

BAL STATUS SUMMARY ---CONTINUATION---    PAGE    2

CDC·NUMBER  |  NAME
  K81757    |  ████████ , ███████████

IS 02/05/1998                    ** ██████ ████████ ***
ID 03/06/2003                    SCD164617
ID 03/06/2003                    SCD164617
  CURRENT PC BALANCE:    0        CURRENT BC BALANCE:    0

D/MEPD IS 04/30/2008 BASED ON CREDIT APPLIED THRU 11/30/2006 AND WORK GROUP A1

*Aministrative Correction of Credit Code from 4 to 1 per In Re Reeves*

# INMATE COPY

STATUS SUMMARY TYPE-

NUMBER | NAME *SHAFFER / SHAFER*

SHAFFER, DANNY, RAY

M STAR/S | MAX REL DATE | MAX ADJ REL DT | CURRENT REL
7/26/2004 | 05/29/2005 | 05/29/2005 | 05/29/2005

TERM  1/04 + ENHCMNTS  0/00 = TOT TERM  1/04 | PAROLE PERIOD
| 3 YRS

PRISON + POST SENTENCE CREDITS

DAYS    33                              18              66

DNA COMPLETED
TEST/ON REQUIRED PER PC2900.5

JT/ COUNTY/    CASE    SENTENCE DATE                CREDIT    OFFENSE
       OFF-CODE    DESCRIPTION                      CODE      DATE

BILLING PRINCIPAL & CONSECUTIVE   (INCLUDES ENHANCEMENTS/OFFENSES)

CONTROLLING CASE ---
2004   RIV   SWF005405   3/19/2004                    ASSAULT   05/29/2005
            ACCESSORY TO FEL                          W/ FIREARM

CONTROLLING OFFENSES:
1992   RIV   CR26046?   5/23/1992
245(A)(2) ASLT W/FIREARM
          (12022N,PR-)
          P12022.5(A)  01 USE F ARM                   4   12/19/1992

PC 2933.1                                             85%
                                                     PC 2933.1
2004   RIV   SWF002600   9/30/2003
10851(A)  VEHICLE THEFT                               00/00/200?

WAIVER              BEGINNING   CREDIT   TOTAL   TOTAL      NET
                    BALANCE     APPLIED  LOST    RESTORED   TOTAL
2004                                     0                  50%

AUTO RE-VESTED PER PC-2934      3

DATE   ENT DATE GOV NUMBER   RULE   D A Y S
                             NUMBER   ACNESS LOST REST READ

CONTINUED                                    EXH.  A

STATUS SUMMARY ---CONTINUATION---    PAGE    2

NUMBER  |  NAME    SHAFFER DANNY RAY

03/12/1997                   ********BAL********
3/12/1997                    CR6046/
03/26/2004                   SUP:003600
RENT PC BALANCE:      0              CURRENT  SC  BALANCE :

LANCE =    0 AS OF 03/26/2004

EPD IS 10/26/2004 BASED ON CREDIT APPLIED THRU 03/26/2004 AND MORE GROUP 41

EXH.    A    15

# EXHIBIT "O"

1  MAURICE EDWARD CAMPBELL
   CDCR # E-10493
2  CTF C-243 L
   P.O. BOX 689
3  Soledad, CA 93960
    In Pro Per,
4

5

6

7              IN THE UNITED STATES DISTRICT COURT

8         FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10  MAURICE EDWARD CAMPBELL )      Case NO._____
                Petitioner, )
11                          )        VERIFIED DECLARATION
             v.             )        OF MAURICE EDWARD
12                          )        CAMPBELL, PETITIONER.
    BEN CURRY, (Warden)     )
13              Respondent, )

14  _____

15      I, MAURICE EDWARD CAMPBELL, hereby declare and affirm

16  under penalty of perjury and the laws of the State of

17  California and the United States of America as follows:

18      1. I am a citizen of the United States of America and a

19  resident of the State of California, currently incarcerated

20  in a California state penal facility, to wit, the Correctional

21  Training Facility (CTF), located in Soledad, California, in

22  the County of Monterey. I am over the age of 18 years, and

23  if called upon, competent to testify as follows:

24      2. Since my arrival to CDCR and at the Time of the

25  inception of (BEP) in 2003, I have been aware of CDCR's policy

26  which allows selected prisoners to sign a Pen C. 2934 waiver

27  and thereafter become eligible to participate in (BEP) and

28

to earn day for day credits under Pen C. 2933 and reduce their sentence. This is true despite these selected prisoners limitations in accrual of credits by virtue of their convictions for either a serious or violent felony. Although CDCR has not provided any documentation, I have submitted verbatim, the eligibility criteria for (BEP), prior to it becoming a regulation. (Ex-D)

3. I have also managed to obtain copies of authentic departmental documentation in the form of Legal Status Summaries of prisoners who have been allowed to sign a Pen C. 2934 waiver and who have become eligible for sentence reduction by earning credits under Pen C. 2933, despite being limited to the accrual of credits under Pen C. 667 (c)(5) and Pen C. 1170.12 (a)(5). This irrevocable waiver also allows these prisoners to by-pass the traditional waiting list and receive priority assignment. See CDC form-188 LSS, (Ex-N).

4. CDCR will not disclose nor produce any relevant information or documentation and without this information I would not be able to adequately present with support the claim presently being raised therein the accompanying petition. Despite all of my requests to sign a Pen C. 2934 waiver and request to participate in work or education assignment, I have only been allowed to work approximately 3 weeks since the begining of my prison term in 2003.

5. I, Maurice Edward Campbell, hereby declare and affirm on this 20th day of July , 2908, that all the foregoing is true and correct.

By: _____
Declarant

VERIFICATION

STATE OF CALIFORNIA    )
                       )
COUNTY OF **MONTEREY**    )

(C.C.P. SEC. 446 & 2015.5; 28 U.S.C. sec 1746)

I, **Maurice E. Campbell**, declare under penalty of perjury that: I am the **Petitioner**, in the above-entitled action; I have read the foregoing documents and know the contents thereof; and the same is true of my own knowledge except as to matters stated therein upon information and belief, and as to those matters, I believe they are true.

Executed this **20th** day of **July 2008** at **C.T.F.** State Prison, P.O. Box **689**, **Soledad, CA 93960**

[Signature]  _M E Gul_
DECLARANT/PRISONER

*****************************************

PROOF OF SERVICE BY MAIL
(C.C.P. sec. 1013(a) & 2015.5; 28 U.S.C. sec 1746.)

I, **Maurice E. Campbell**, am a resident of **C.T.F.** State Prison, in the County of **Monterey**, State of California; I am over the age of eighteen (18) years and am, a party of the above-entitled action. My state prison address is: **P.O. BOX 689 Soledad California**, **93960**

On **July 22, 2008**, I served the foregoing:

**(PETITION FOR WRIT OF HABEAS CORPUS)**

**(APPLICATION FOR IN FORMA PAUPERIS)**

(Set forth the exact title of document(s) served.)

on the party(s) herein by placing a true copy(s) thereof, enclosed in a sealed envelope(s), with postage thereon fully paid, in the United States Mail, in a deposit box so provided at **C.T.F. Soledad** State Prison, P.O. Box **689 Soledad, CA 93960**, addressed as follows:

**UNITED STATES DISTRICT COURT NORTHERN DISTRICT**

**450 Golden Gate Avenue P.O. BOX 36060**
**San Francisco, California 94102**

There is delivery service by United states Mail at the so addressed, and/or there is regular communication by mail between the place of mailing and the place so addressed. I declare under penalty of perjury that the foregoing is true and correct.

DATED: **July 22th**, 2008    _M E Gul_
Petitioner/Declarant

UNITED STATES POSTAGE

$ 04.80⁰
PITNEY BOWES

02 1M
0004229613   JUL 31 2008
MAILED FROM ZIP CODE 93960

MAURICE EDWARD CAMPBELL
CDCR #E10493   CTF C-243ᴸ
P.O. BOX G89
SOLEDAD, CA 93960

RECEIVED

AUG 1 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT FOR

NORTHERN DISTRICT OF CALIFORNIA

450 Golden Gate Ave   P.O. Box 36060

San Francisco, CA 94102

U.S. MARSHALS SERVICE

AUG - 1 2008

INSPECTED BY

M. CAMPBELL #E-10493 G-242L

CTF
Attn: MAILROOM
PLEASE PROCESS ENCLOSED
IN FORMA PAUPERIS APPLICATION.